(96 South. 915)

## GRAUER v. ALABAMA GREAT SOUTHERN R. CO.   (2 Div. 790.)

(Supreme Court of Alabama.   June 7, 1923.)

**1. Railroads** ⊚═⇒391(3)—**Liability for wanton injury to trespasser on track dependent on customary use of track.**

The theory of liability for wanton injury to trespasser on railroad tracks is that the people of the town and neighboring territory habitually used the track for longitudinal passage in such numbers and with such frequency that the trainmen were charged with notice that someone would probably be on the track and probably be injured by the train unless reasonable cautions were taken.

**2. Railroads** ⊚═⇒391(3)—**Liability for wanton injury to trespasser not dependent on use of track on special occasions.**

In action for wanton injury to a trespasser on a railroad track, the density of the neighboring population, the general custom of using the track as a passageway, the number who used it, and the frequency and notoriety of such use are pertinent, but it is not permissible to show that on special occasions or at hours other than about the hour at which the injury occurred, great or unusual numbers of people had used or habitually used the track for special purposes.

**3. Appeal and error** ⊚═⇒1056(2)—**Evidence applicable only to count not submitted held harmless.**

Where plaintiff's right to recover for injuries to a trespasser by defendant railroad company was limited to a count on wanton injuries, exclusion of a town ordinance limiting speed was not prejudicial to the plaintiff; being relevant only to the issues of initial negligence.

**4. Railroads** ⊚═⇒390—**Original negligence in going on track does not defeat recovery unless person is conscious of peril.**

The continuation of a trespasser's original negligence in walking on the track will not absolve the railroad company from liability for negligence and subsequent negligence, but he must have become conscious of his immediate peril, and thereafter have negligently failed to extricate himself.

**5. Railroads** ⊚═⇒397(1)—**Evidence of running switch held irrelevant.**

In action for wanton injury to trespasser on track, evidence that the train "made a running switch down there that day" was properly excluded, where having no connection with the injury.

**6. Railroads** ⊚═⇒397(1)—**Evidence of duties of brakemen or flagmen held competent.**

In action for wanton injury to trespasser on track by a backing train, evidence of the duties of the brakemen or flagmen stationed on top of the train as employees of the railroad company was competent, but not as to their duties, as matter of law, to the trespasser.

**7. Witnesses** ⊚═⇒236(1)—**Ambiguous question which might permit competent as well as incompetent evidence properly excluded.**

In action against a railroad company for injury to a trespasser, question as to the duties of the brakemen or flagmen ambiguously framed so as to indicate either duty to the company, which was admissible, or duty to the trespasser, which was not admissible, was properly excluded.

**8. Railroads** ⊚═⇒401(9) — **Instruction as to train crew's knowledge of people "constantly" using track held proper.**

In an action for wanton injury to trespasser, instructions that the train crew knew that the locus in quo had been "constantly," frequently, and regularly used by a considerable number at about that hour of the day was not subject to the criticism that the word "constantly" imported an uninterrupted and continuous presence of such persons on the track, so that at no moment of time it would be vacant of pedestrians.

[Ed. Note.—For other definitions, see Words and Phrases, Constantly.]

**9. Railroads** ⊚═⇒401(9)—**Instruction on wanton injury held not erroneous.**

An instruction that the wanton injury charged against railroad company for injury to a trespasser was the legal equivalent of an

---

⊚═⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

intentional injury—that is, of intentionally injuring or killing some person, or intentionally allowing him to be killed—was not erroneous though possibly misleading, and it was not error in view of general instructions, which could have left no doubt as to the true elements of wanton injury.

**10. Railroads ☞369(3)—Rule exempting company from duty of lookout as to trespasser qualified in application to conditions.**

The rule that railroad company owes no duty as to a trespasser on its track to keep a lookout for him has been qualified in its application to special conditions, under which it may owe duty of looking for trespassers at a particular point.

**11. Trial ☞194(17)—Instruction that railroad company held no duty to lookout for trespasser invaded province of jury.**

In action for wanton injury to trespasser on railroad track, in which there was evidence of frequent and continued use of track by pedestrians, an instruction that no duty rested on the company to keep a lookout for trespassers, while stating the general rule, invaded the province of the jury, in that it was a question for the jury whether or not, under the special circumstances of the case, the company owed duty of lookout.

**12. Railroads ☞367—Failure to give signals may be negligence, though not required by statute.**

Though Code 1907, § 5473, might not have required the giving of signals by a backing train which injured a trespasser, the duty may have existed as necessary to the safety of one in peril.

**13. Railroads ☞391(1)—Contributory negligence no defense to charge of wanton injury to trespasser.**

Contributory negligence is not a defense in an action against a railroad company for wanton injury to a trespasser on the track.

**14. Railroads ☞401(9)—Instruction held erroneous as making initial negligence a bar to recovery for wanton negligence.**

In action against a railroad company for wanton injury to trespasser, an instruction that if he "was walking along the defendant's railroad track at the time, * * * and this conduct was the sole and proximate cause of his death, your verdict must be for the defendant," was erroneous and should have been refused; its effect being to make the initial negligence of the deceased a bar to recovery for wanton negligence.

**15. Trial ☞194(17)—Instruction that use of railroad track by 40 persons did not impute knowledge to company held invasion of jury province.**

In action against a railroad company for injury to a trespasser, instruction that use of the track by as many as 40 persons about the hour of the injury would not be sufficient to charge operators of the train with notice that some one might be likely to be on the track invaded the province of the jury.

**16. Railroads ☞401(1)—Instruction denying recovery if trespasser on track met death by "accident" held confusing.**

In action against a railroad company for injury to a trespasser on the track, an instruction that, if deceased met his death as result of an "accident" solely, the verdict must be for defendant, is confusing, the word "accident" being defined as any unpleasant or unfortunate occurrence causing injury, loss, suffering, or death," and while it may signify an unexpected occurrence to which no cause is assignable, its meaning, both literary and popular, is broader.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accident—Accidental.]

Appeal from Circuit Court, Greene County; S. F. Hobbs, Judge.

Action by L. M. Grauer, as administrator of the estate of Hylton Grauer, deceased, against the Alabama Great Southern Railroad Company, for damages for wrongful death of intestate. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Plaintiff's intestate was killed, while walking on defendant's track, by a local freight train, which was backing a short distance to a spur track.

The complaint is in five counts, the first four declaring on simple and subsequent negligence, and the fifth on wanton and wrongful injury. The trial judge charged out the first four counts, and the case went to the jury on the fifth or wanton count.

The town of Epes includes within its corporate limits the station and all the tracks and right of way of defendant railroad company from the station to the Tombigbee river, about half a mile to the northeast. After crossing the river going south, a side track branches out from the main line on the right, and extends beyond the station, from which point both tracks are visible to the river bridge. The tracks are parallel, and their inner rails are about 8 feet apart.

On this occasion the local freight train going south arrived at the station; the engine stopping at the passenger depot, and the train being on the side track. The train, according to the testimony of the conductor, consisted of the engine, eleven cars, and the caboose; but the station agent testified that he thought there were 7 or 8 cars, which averaged 36 feet in length.

While this train was standing still, the intestate, a young man, 21 years of age, came up and spoke to the station agent and the members of the train crew who were standing in front of the passenger depot near the engine. The agent, Hylton, testified that intestate said he was going to dinner at Mrs. Horton's, who lived near the railroad, on the south side, and near to the river; that he

then walked off in that direction on the main track and proceeded about 150 yards, when he met a through freight train coming south, and stepped off the main track and got on the side track in the rear of the local freight, which was then standing still; that intestate then walked about 100 yards before he was struck and killed; that witness did not see the train strike deceased, and did not know it until later; that the train backed up the side track in a minute or two after deceased got on that track; and that, when deceased moved over to the side track "he was in the line of vision" of the train crew standing near the engine, with nothing between them.

Mrs. La Grone, a witness for plaintiff, testified that she saw the train strike deceased; that deceased was walking with his back to the train, and the train was moving slowly, about like a man would walk; and that, so far as she knew or could see, the train crew had no knowledge of the accident until she called to them and informed them.

The evidence tended to show that just before the accident the through freight was passing by deceased, over the main track, at a speed of 10 or 15 miles an hour, and making a great noise. Members of the train crew testified that the backing train was moving at a speed of 3 or 4 miles an hour. Miss Ritchie, a witness for plaintiff, who was on the track just after the through train passed and saw the accident but a short distance away, testified that the backing train was moving pretty fast, and about as fast as the through train was moving.

The testimony of the train crew showed without dispute that, when the train began backing, and while it was backing, the engineer and fireman were in the engine cab; one brakeman was on the tank; another—one Manderson—was about midway of the train on top of a car; and no one was on the caboose. Manderson was facing and walking in the direction the train was running. He did not testify in the case, but the engineer and the other brakeman testified that they did not see the deceased on or near the track, and did not know of his presence.

The questions presented on pleadings, evidence, and instructions, are sufficiently stated in the opinion.

Harsh, Harsh & Harsh, of Birmingham, and Harwood, McKinley, McQueen & Aldridge, of Eutaw, for appellant.

It is the duty of the train crew operating a train in a town where the tracks are frequently used by the public to keep a diligent lookout, not only for those crossing the track, or rightfully using the track, but even for trespassers. L. & N. R. Co. v. Heidtmueller, 206 Ala. 29, 89 South. 129; L. & N. R. Co. v. Ganter, 16 Ala. App. 323, 77 South. 918; So. Ry. Co. v. Stewart, 179 Ala. 310, 60 South. 927; A. G. S. v. Guest, 136 Ala. 348, 34 South. 968. Where wantonness is charged it is always material to show the previous use of the track upon which the train running against an intestate is being operated, and to show such use for a reasonable time before and up to the time of the tragedy. To this end, any fact showing or tending to show the point in question is relevant and admissible. Sou. Ry. Co. v. Forrister, 158 Ala. 483, 48 South. 69; No. Ala. Ry. Co. v. Guttery, 189 Ala. 611, 66 South. 580; Birmingham Sou. Ry. Co. v. Fox, 167 Ala. 284, 52 South. 889; B. R., L. & P. Co. v. Saxon, 179 Ala. 154, 155, 59 South. 584; M. & C. R. R. Co. v. Martin, 117 Ala. 383, 23 South. 231; No. Ala. Ry. Co. v. Counts, 166 Ala. 554, 51 South. 938; Weatherly v. N., C. & St. L. Ry., 166 Ala. 587, 51 South. 959; Haley v. K. C., M. & B. R. R. Co., 113 Ala. 650, 21 South. 357. In order to show wantonness it is not necessary to show that for any period of time prior to the injury the use of the track by the public in passing along it was not only frequent, but also "constant." No. Ala. Ry. Co. v. Guttery, 189 Ala. 611, 66 South. 580. The court cannot say as matter of law that, if "as many as 40 persons used the defendant's track at or near the place where plaintiff's intestate was killed between 11 a. m. and 1 p. m. each day, for a long period of time prior to the time plaintiff's intestate was killed," this would not be sufficient to charge the person or persons in charge of the train on that occasion, with notice that some one was likely to be at that point at the time it is alleged that plaintiff's intestate was killed. B. R., L. & P. Co. v. Saxon, supra. Wantonly causing death is not the legal equivalent of intentionally causing it. B. R., L. & P. Co. v. Cockrum, 179 Ala. 373, 60 South. 304; Brown v. St. L. & S. F., 171 Ala. 310, 55 South. 107; Ensley Ry. Co. v. Chewning, 93 Ala. 24, 9 South. 458; A. G. S. v. Burgess, 119 Ala. 555, 35 South. 251, 72 Am. St. Rep. 943; Renfroe v. Collins & Co., 201 Ala. 492, 78 South. 395; Birmingham Ry. & El. Co. v. Pinckard, 124 Ala. 372, 26 South. 880. It is the duty of a railroad operating a train through or within a town to have the engine bell rung or the whistle blown, one or the other, and the court had no right to tell the jury that neither of these things was a duty upon the defendant in this case. Code 1907, § 5473; Duncan v. St. L. & S. F. R. Co., 152 Ala. 131, 44 South. 418; L. & N. R. Co. v. Davener, 162 Ala. 663, 50 South. 276; So. Ry. Co. v. Douglass, 144 Ala. 359, 39 South. 268; Birmingham So. Ry. Co. v. Fox, 167 Ala. 283, 52 South. 889; Savannah & Western R. Co. v. Meadors, 95 Ala. 144, 10 South. 141. The court had no right to charge the jury at the request of the defendant that the deceased was guilty of negligence that proximately contributed to his death, nor has the court a right to charge specially that such fact, or other fact, must be taken into consideration by the jury in determining another fact to be arrived at. Montevallo Min. Co. v. Under-

wood, 202 Ala. 59, 79 South. 453; B. R., L. & P. v. Demming, 3 Ala. App. 359, 57 South. 408; Sou. Ry. Co. v. Fricks, 196 Ala. 63, 71 South. 701; Birmingham R. & E. Co. v. Pinckard, supra.

Smith, Wilkinson & Smith, of Birmingham, for appellee.

The deceased, being a trespasser, was guilty of contributory negligence, and the defendant owed him no duty, except to refrain from wantonly injuring him, or negligently injuring him after discovery of his peril in time to avoid the accident. So. Ry. v. Stewart, 179 Ala 304, 60 South. 927; Whitehead v. St. L. & S. F., 179 Ala. 314, 60 South. 930; S. & W. R. Co. v. Meadors, 95 Ala. 137, 10 South. 141; Glass v. M. & C. R. Co., 94 Ala. 581. 10 South. 215; Haley v. K. C., M. & B. R. R., 113 Ala. 640, 21 South. 357. Wantonness, or intention to injure, can never be imputed to the employees of a railroad, unless they actually know, not merely ought to know, the perilous position of the person on the track. So. Ry. v. Stewart, supra. There cannot be any subsequent negligence until an actual discovery of the peril, in time to avoid the accident, has been made. Cen. of Ga. v. Blackmon, 169 Ala. 304, 53 South. 805; Helms v. Cen. of Ga., 188 Ala. 393, 66 South. 470; Anniston Co. v. Rosen, 159 Ala. 195, 48 South. 798, 133 Am. St. Rep. 32. When the negligence of the plaintiff is continuous down to the moment of the injury, he cannot recover, in the absence of wantonness. St. L. & S. F. v. Schumacher, 152 U. S. 77, 14 Sup. Ct. 479, 38 L. Ed. 361; Weatherly v. N., C. & St. L. Ry., 166 Ala. 583, 51 South. 959. It is not wantonness to fail to keep a lookout while operating a train in a sparsely settled section. Whitehead v. St. Louis & S. F. R. Co., 179 Ala. 314, 60 South. 930.

SOMERVILLE, J. We have examined the testimony in the record with studious care, and our conclusion, in accord with the ruling of the trial court, is that there was nothing from which the jury could rationally find that any member of the train crew operating the train that killed the intestate had knowledge at any time that he was on the track in front of the backing train, and in peril from its movement; from which it results that the jury were properly instructed that they could not find for the plaintiff on the subsequent negligence count. It is conceded that the first three counts for simple original negligence were not supported by the evidence, and the only questions for review are those which relate to the issues arising under the fifth count, for wanton injury.

[1] Under the wanton injury count, the only theory on which the evidence could support a recovery was that the people of Epes and of the neighboring territory habitually used the railroad track in question, for longitudinal passage, in such numbers and with such frequency—that fact being known to defendant's servants who were operating this freight train—as that the trainmen were charged with notice that some one would probably be on the track in an exposed situation, and would probably be injured by the operation of an engine, or train, or the running of cars, on the track, unless reasonable precautions were taken to prevent such a result, and a failure to take such precautions.

This theory of liability is well settled in this state, and has been applied in a great many cases. So. Ry. Co. v. Stewart, 179 Ala. 304, 60 South. 927, and cases therein cited: North. Ala. Ry. Co. v. Guttery, 189 Ala. 604, 66 South. 580; L. & N. R. R. Co. v. Heidtmueller, 206 Ala. 29, 89 South. 191: B. R., L. & P. Co. v. Saxon, 179 Ala. 136, 154, 59 South. 584.

When the required conditions are shown to have existed. it is, of course, a question for the jury whether the circumstances of the particular case establish the charge of wanton injury.

[2] The facts which are pertinent for consideration are the density of the neighboring population; the general custom of using the track as a passageway; the number of people who use it; and the frequency and notoriety of such use. It is, however, not permissible to show that on special occasions, or at hours other than about the hour at which the injury occurred, great or unusual numbers of people have used, or habitually use, the track for special purposes. L. & N. R. R. Co. v. Heidtmueller, 206 Ala. 29, 89 South. 191, 193.

The evidence in this case was, we think, sufficient to bring the locus of the injury complained of within the purview of the rule of liability above stated; and it was therefore within the province of the jury to find that a duty rested on the defendant company to observe some appropriate precaution or precautions in the operation of its trains at the point of injury, in order to avoid it; the omission of one or all of which might stamp the conduct of the responsible trainman as wanton negligence, and the proximately resulting injury as wanton injury.

The precautions which the circumstances may thus require—the factors which may, in the jury's estimation, render the trainmen's mode of operating the train a just foundation for the conclusion of wanton injury—are the running of the train at such a speed as to permit of its effective control in case some one is discovered on the track in dangerous proximity, and to permit the endangered person to escape when warned of his danger; the giving of warning signals of approach; and the keeping of a lookout for observation, and seasonable warning, or checking or stopping the train. The omission of all of these measures in a given case might very well indicate a wanton disregard

of human life; while, on the other hand, observance of a single one of them might, notwithstanding its inadequacy, satisfactorily rebut that conclusion.

So, the location of the track, the greater density of the surrounding population, and the more constant use of the track by larger numbers of people—all of which is known to the trainmen—might bring the omission. of any one of those precautions within the field of wanton negligence.

Under the circumstances here shown, it is difficult to see how a wanton disregard of human life could be imputed to the operators of this train if it was backing at a speed of only 3 or 4 miles an hour, though without signals of approach or adequate lookout, since the tragedy which occurred was undoubtedly due to the chance circumstance of a passing train on the main line, diverting the victim's attention, and interfering with his sense of hearing.

These are all matters of evidence for the consideration of the jury, but the ultimate inquiry is always the same: Do the facts of the case satisfactorily show that some person would probably be on the track at any given time; that his probable presence there is known to the responsible trainmen; and that, with such knowledge in mind, they intentionally, not inadvertently, omit a precaution which any reasonable man must understand will probably result in injury to any person on the track in front of the advancing train?

While the trainmen's knowledge of such conditions may be implied from the fact that they have had sufficient opportunities to observe and understand them (M. & C. R. R. Co. v. Martin, 117 Ala. 367, 385, 23 South. 231; So. Ry. Co. v. Stewart, supra), it is obvious that resident observers will see much more than itinerant trainmen; and that a free use of the track by the public, though comparatively constant, may be apparent to a regular observer, and yet escape, in large measure, the ordinary observation of trainmen. All this is, of course, for the consideration of the jury.

Many witnesses were examined on this subject, and many exceptions were reserved by plaintiff to rulings excluding questions and answers. Some of these rulings were clearly erroneous, but the bill of exceptions shows that the testimony of the witnesses was sufficiently full and comprehensive to render those rulings harmless.

[3] As the plaintiff's right to recover, if at all, was limited to the wanton count, the exclusion of the town ordinance of Epes, limiting the speed of trains within the corporate limits to 6 miles an hour, was without prejudice to plaintiff, since it was relevant to the issue of initial negligence only. C. of G. Ry. Co. v. Blackmon, 169 Ala. 304, 313, 53 South. 805.

[4] Our view of the evidence, as limiting the issue to the question of wanton negligence based on the trainmen's imputed notice of the intestate's probable presence on the track, perhaps renders unnecessary any consideration of questions relating to the pleas of contributory negligence. It is, however, pertinent to observe that plea 8 was manifestly bad as an answer to the fourth or subsequent negligence count, in that it wholly fails to allege that the intestate was conscious, or became conscious, of his peril from the backing train, in time to avoid the injury. The mere continuation of his original negligence—walking on a track which was perilous in general, and known to him to be so—does not meet the requirement that he must have become conscious of his immediate peril, and thereafter have negligently failed to extricate himself. L. & N. R. Co. v. Brown, 121 Ala. 227, 25 South. 609; B. R., L. & P. Co. v. Ætna, etc., Co., 184 Ala. 601, 607, 64 South. 44; C. of G. Ry. Co. v. Blackmon, 169 Ala. 304, 53 South. 805. A consciousness of that general danger which is incident to an exposed situation is not the equivalent of a consciousness of the particular and immediate peril which results in injury; and this latter alone is the consciousness which, followed by the victim's negligent failure to conserve his safety, will suffice to defeat a recovery. The demurrer to this plea pointed out this defect, and should have been sustained. Plea 7 was bad for the same reason, as an answer to count 4.

[5] It was not competent for plaintiff to show that the conductor of this train "made a running switch down there that day," and such evidence was properly excluded. It certainly had no bearing upon any of the issues in the case.

[6, 7] It was competent for plaintiff to show what were the duties of the brakemen. or flagmen, Sims and Manderson, who were stationed on top of the backing train; that is to say, their duties as employés of the railroad company, not their duties, as a matter of law, to a trespasser on the track. The question as to their duties was, however, ambiguously framed so as to indicate either class of duties, equally, and for that reason it was not error to exclude it.

[8] Several of the written charges (B, C, D, and E), given to the jury at the instance of defendant, require as a condition to liability for wanton injury, a finding that "the person or persons in charge or control of said train on said occasion, or one of them, knew at said time that the place where the intestate was struck, had been constantly, frequently, and regularly used by a considerable number of people at or about that hour of the day."

Appellant's criticism of these charges is: that they require too much; the idea being that the word "constantly" imports an uninterrupted and continuous presence of such

persons on the track, so that at no moment of time would it be vacant of pedestrians. Lexicographers do not give to the word so strict a meaning, but define it, in applications like this, as meaning regularly or frequently recurring: long continuing; steadily. No doubt it is sometimes used in the sense of unintermittently—that is, literally, without any interruption; but that is not its ordinary meaning. We do not think that the use of the word in this instance made the charges bad, and its misleading tendency, if any, could have been corrected by explanatory instructions.

[9] Another group of charges (V and HH) instructed the jury that wanton injury, as here charged, is the legal equivalent of an intentional injury; that is, of intentionally killing or injuring some person on that occasion, or of intentionally allowing him to be killed. This, of course, does not mean that there must have been an actual intention to kill. Charges like these have been held as not erroneous, though possibly misleading, in Vessel v. S. A. L. Ry. Co., 182 Ala. 589, 62 South. 180, citing the cases which support the proposition stated. In the instant case, the general instructions given to the jury could have left no doubt in their minds as to the true elements of wanton injury.

[10, 11] Given charge 15 asserts that "the plaintiff's intestate was a trespasser on the track of the defendant, and that no duty rested upon the defendant, or its employés, to keep a lookout for him to discover whether or not he was on the track." This is, of course, the general rule as to trespassers, but it has been qualified in its application to special conditions. S. & W. R. R. Co. v. Meadors, 95 Ala. 137, 10 South. 141; A. G. S. R. Co. v. Guest, Adm'r, 136 Ala. 348, 34 South. 968; So. Ry. Co. v. Stewart, 179 Ala. 304, 309, 60 South. 927. Under these and other decisions, it was a question for the jury whether or not, under the circumstances of this case, there was a duty on the part of the trainmen to keep a lookout for trespassers at this point. The charge in question invaded the province of the jury, and was erroneously given. Haley v. Kas. City, etc., R. R. Co., 113 Ala. 640, 652, 21 South. 357.

[12] For the same reasons, charges 31, 32, and 33, denying defendant's duty to blow the whistle or ring the bell when backing the train, were erroneous, and should have been refused. This duty, if it exists under such circumstances, is not one imposed by the statute (Code, § 5473), but because it is, or may be, necessary to conserve the safety, from death or serious injury, of those who are in peril. S. & W. R. R. Co. v. Meadors, 95 Ala. 137, 143, 10 South. 141.

Given charge 16 denies liability for wanton negligence unless defendant or its employés "actually knew the peril of deceased in time to have avoided injuring him." Under the principles above stated, this charge was manifestly erroneous, and should have been refused.

[13] Given charge 101A instructed the jury to "take into consideration the fact that the deceased was guilty of negligence that proximately contributed to his death, in determining whether the material allegations of the fifth count of the complaint have been established." This, in effect, left the matter of contributory negligence, as a defense to the wanton count, to the discretion of the jury, and was contrary to the settled law on this subject. The giving of this charge was error.

Given charge 17, requiring proof that defendant's employés "actually knew that the deceased was in peril, or likely to be in peril, in time to have avoided the accident," etc., though correct as applied to the issue of subsequent negligence, was not applicable to the issue of wanton negligence as above explained, since it required actual knowledge of the presence of the deceased, as a definite personality, whereas it was necessary only that the trainmen should have known that some one would likely be in peril.

Charge M invaded the province of the jury, since, as pointed out, the backing of the train, under the circumstances shown, without signals (if that phase of the evidence were believed), and without lookout on the caboose, could support an inference of wantonness, weak though it might be.

[14] Charge 24 that, if the deceased "was walking along the defendant's railroad track at the time, * * * and this conduct was the sole and proximate cause of his death, your verdict must be for the defendant"—was erroneous and should have been refused. Its effect was to make the initial negligence of the deceased a bar to recovery for wanton negligence. Renfroe v. Collins & Co., 201 Ala. 489, 492, 78 South. 395.

[15] Charge J, that the fact "that as many as 40 persons used the defendant's track at or near the place, * * * between 11 a. m. and 1 p. m., each day, for a long period of time prior to the time * * * intestate was killed, would not be sufficient to charge the person or persons in charge of the train on that occasion, with notice that some one would likely be at that point at the time * * * intestate was killed"— is, we think, a clear invasion of the province of the jury, and should have been refused. It is true the charge was explained to the jury at some length, but the explanation was hardly consistent with the instruction.

[16] Such charges as the one numbered 100, that "if the deceased met his death as the result of an accident solely, your verdict must be for the defendant"—are calculated

to confuse the jury, and had better be refused.

The New Standard Dictionary defines "accident" as "any unpleasant or unfortunate occurrence causing injury, loss, suffering, or death." While the word may signify an unexpected occurrence for which no cause is assignable, its meaning, in both literary and popular usage, is much broader than that.

Quite a number of other special instructions were given at the instance of defendant. They are too numerous for detailed consideration, and what has been already said should suffice as a guide to the trial court on the next trial.

For the errors noted, the judgment will be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.