(112 So. 148)

### COMPTON v. WESTERN RY. OF ALABAMA.
### (3 Div. 761.)

(Supreme Court of Alabama.   March 24, 1927.)

**1. Railroads** ⬗➾348(4)—**Evidence held to authorize finding of simple negligence in operating train without signals and lights.**

In action for damages to automobile by collision with train at crossing, evidence that train went upon crossing without warning signals and lights, if believed by jury, authorized finding that railroad was guilty of simple negligence, giving plaintiff cause of action.

**2. Railroads** ⬗➾338—**Trainmen stopping within 30 feet held not guilty of negligence after discovering peril.**

In action for damages to automobile colliding with train at crossing, evidence that train moving 4 feet per second was stopped within 25 or 30 feet after sighting plaintiff raised no inference of culpability, as against evidence that trainmen took prompt action to avoid collision which showed trainmen were not guilty of negligence after discovering plaintiff's peril.

**3. Railroads** ⬗➾339(1)—**Backing of train over crossing slowly without lights or signals did not raise inference of wantonness.**

In action for damages to automobile struck by train at crossing, no inference of wantonness by trainmen arises from mere fact that train was backing onto crossing at speed of 2 or 3 miles an hour without lights or warning

signals from engine though crossing was a constantly used public highway.

**4. Railroads** ⬗➾350(13)—**General affirmative charge for railroad is required, where undisputed evidence shows contributory negligence.**

In action for damages to automobile colliding with train at crossing, general affirmative charge for railroad depended on showing by undisputed evidence that plaintiff was guilty of contributory negligence as matter of law, and charge is presumed to have been given on such theory.

**5. Railroads** ⬗➾350(19)—**Whether plaintiff could have prudently driven automobile nearer to tracks before stopping held for jury.**

In action for damages to automobile colliding with train at crossing, court could not say, as matter of law, that plaintiff could have prudently driven car nearer than 7 or 8 feet to tracks before stopping, or that in traveling remaining distance to track he could have seen or heard approaching train any better than he could before starting.

**6. Railroads** ⬗➾350(16)—**Whether plaintiff stopping automobile must have seen or heard train held for jury.**

In action for damages to automobile colliding with train at crossing, court could not say, as matter of law, that plaintiff, after stopping 7 or 8 feet from tracks, must have seen or heard, and did actually see or hear, train if he in fact looked and listened.

**7. Railroads** ⬗➾350(16)—**Evidence that light shone over crossing held not to show with certainty automobile driver must have seen train without lights.**

In action for damages to automobile colliding with train at crossing, evidence that garage light shone over crossing did not show with certainty that ordinary observer from plaintiff's position must have seen train without lights in darkness.

**8. Evidence** ⬗➾8—**Court will not take judicial knowledge of noise made by short train traveling three miles per hour.**

In action for damages to automobile colliding with train at crossing, court could not judicially know that train of four box cars pushed onto crossing at speed of 2 or 3 miles an hour must have made enough noise to be heard by any one who stopped and listened before crossing tracks as it would know of ordinary train running at high or ordinary speed.

**9. Railroads** ⬗➾350(16)—**Whether automobile driver would have seen and heard train if he stopped, looked, and listened held for jury.**

In action for damages to automobile colliding with train at crossing, inference that plaintiff would have both seen and heard train if he had stopped, looked, and listened before crossing tracks, is one of fact for jury, and not an imperative conclusion of law for court.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action by T. S. Compton against the Western Railway of Alabama.  From a judgment

---

⬗➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

for defendant, plaintiff appeals. Reversed and remanded.

The action is for damage done to plaintiff's automobile by a collision with defendant's train at the Birmingham-Montgomery Highway crossing, just north of the city of Montgomery. The accident occurred about 6 o'clock p. m., on November 18th, on a dark, cloudy, and moonless night. An engine was pushing backwards over the crossing a cut of four freight cars, at a speed of 2 or 3 miles an hour, and plaintiff was going south. A garage faces the highway on the west side, being 20 to 40 feet, as variously estimated, from the railroad track, and on the north side of it. A large light was placed on the front of this garage which lit up the highway in front and the crossing. As to the circumstances of the collision, plaintiff testified:

"I drove up to this crossing, within 7 or 8 feet of the track, and saw no train nor heard any. There was no warning, and I started on across, and as I got upon the track a car ran into the side of my car. There was no light on the first car at all, not on the end or upon the top that I could see, and no person on the ground anywhere around. When they hit me they shoved me across the street, I would say something like 10 or 12 feet. * * * There was no flagman out in the road, * * * no light, nothing to show, no warning at all. * * * I stopped something like 7 or 8 feet of the track. I came to a dead stop. I didn't cut off my engine. I looked both ways and did not see that train coming at all. * * * I had gotten past the edge of the garage. There was nothing to obstruct my view of the train at all, except that it was just dark, perfectly dark. * * * During that 7 or 8 feet that I traveled I did not look down to the right for the train again. The bell on the engine was not ringing. My motor was running, * * * when the train hit me I was running something around 5 or 10 miles an hour in second gear. * * * After I passed the garage the light was hanging behind me, and it threw some light clear across the crossing."

Plaintiff was asked what kept him from seeing the box cars when they got in that light, and replied that "the light, of course, would have a tendency to reflect on them, but he didn't know." He was asked if he had looked down to his right during the last 7 or 8 feet that he had traveled, if he might have seen these box·cars that came out of the darkness, and replied that "in this high candle powered light it would be pretty hard to distinguish." He was then asked if, the garage light shining down across the crossing, and the box cars got within that light, there was anything on earth to have kept him from seeing the box cars if he had looked, and replied, "Well, I didn't see them."

Plaintiff further testified:

"The light on the garage did not shine back up toward the way this train was coming from. It wouldn't hardly strike the car until it got right up to the crossing. The light hangs in front of the garage about the middle of the building, and throws the shadow back in the other direction. It makes it dark in the space beyond the light."

Plaintiff's witness Tatum testified, in part, as follows:

"I was the first man to Mr. Compton after the collision. * * * The noise called my attention to it and I went right over there. There wasn't any light at all on the end of the train. * * * I saw a man with a light immediately after the collision. He was coming from the front car. * * * He was on about the second car, on top of the car; he was coming down about middleways of the first box car on the front with his lantern in his hand. * * * When I first saw him he was somewhere about the end of the first car; seemed like he had' just stepped from the second car over to the front car. * * * After the accident * * * I saw two men walking down the side of the cars toward the switch that I supposed to have been trainmen. I don't know where the men were before the accident. * * * I didn't hear any bell ringing, or any whistle blow for that crossing. * * * There wasn't anybody on the train on the end of the car."

The two brakemen or flagmen testified, in substance, that they were both on top of the front car with lanterns, giving signals, flagging the crossing, looking ahead, and watching for cars; that they had given the slow-up signal to let a truck pass, and had almost stopped; that they signaled the engineer to go ahead, and plaintiff's lights appeared; that he was running 20 or 25 miles an hour, and they shouted to him, but he came onto the track without ever stopping his car; that when they saw him, and gave the engineer the stop signal, plaintiff was 30 or 40 feet from the track, and the train was less than 20 feet from the crossing; that after the stop signal the train stopped as quickly as possible—almost at once; and that after the collision they got down on the ground at once, on the south side, and walked up to where plaintiff's car was. They further stated that the engine was around the curve, and their signals were visible to the engineer; that one of them was on the right-hand corner, and the other about the middle of the head car; that the train was making noise, and, if plaintiff had stopped and listened, there was nothing to have kept him from hearing the train.

The engineer testified that he could not see the crossing, but when he got the violent stop signal he used the emergency brakes and stopped almost instantly—within 5 or 6 feet; that the bell was an automatic air rung bell, and was ringing at the time.

On request in writing the court gave the general affirmative charge for defendant, and that is the only assignment of error presented for review.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellant.

The evidence tended to show that the train was backed over the crossing in the night-time, without lights or other warnings to travelers on the highway, and without any one on the lead car. This made a case of primary, simple negligence on the part of the defendant. Southern Ry. Co. v. Shipp, 169 Ala. 332, 53 So. 150; Payne v. Roy, 206 Ala. 435, 90 So. 605; N., C. & St. L. v. Prince, 212 Ala. 499, 103 So. 463; S. & N. A. v. Sullivan, 59 Ala. 282; · S. & M. R. Co. v. Shearer, 58 Ala. 677. It cannot be said as a matter of law that plaintiff was guilty of contributory negligence. Peters v. Southern Ry. Co., 135 Ala. 537, 33 So. 332; Bailey v. Southern Ry. Co., 196 Ala. 135, 72 So. 67; Central of Ga. R. Co. v. Hyatt, 151 Ala. 355, 43 So. 867. The evidence made a case for the jury on the issues of subsequent negligent and willful and wanton conduct. Central of Ga. R. Co. v. Porter, 207 Ala. 417, 93 So. 394; Thompson v. M. & O., 211 Ala. 646, 101 So. 441; Snider v. A. G. S., 210 Ala. 119, 97 So. 209; Hines v. Champion, 204 Ala. 227, 85 So. 511; Hines v. Paden, 204 Ala. 592, 87 So. 88; Payne v. Roy, supra; L. & N. v. Davener, 162 Ala. 663, 50 So. 276.

Steiner, Crum & Weil, of Montgomery, for appellee.

Plaintiff, by the physical facts and testimony in the case, was shown conclusively to have been guilty of contributory negligence, proximately causing his damage. Defendant was entitled to the affirmative charge. L. & N. v. Calvert, 172 Ala. 597, 55 So. 812; L. & N. v. Moran, 190 Ala. 122, 66 So. 799·; A. G. S. v. Smith, 196 Ala. ·77, 71 So. 455; L. & N. v. Cloud, 207 Ala. 373, 92 So. 550; Ball v. Semet Solvay Co., 208 Ala. 649, 95 So. 50; Rothrock v. A. G. S., 201 Ala. 308, 78 So. 84. Plaintiff's duty in the premises required that he stop the running of his motor in order that he might hear the approach of the train. L. & N. v. Turner, 192 Ala. 392, 68 So. 277; Chicago, etc., Co. v. Biwer (C. C. A.) 266 F. 965; Davis v. Chicago Ry. (C. C. A.) 159 F. 10, 16 L. R. A. (N. S.) 424. Plaintiff's mere denial that he neither heard nor saw the train was not sufficient to raise a conflict in the evidence. Peters v. Southern Ry., 135 Ala. 533, 33 So. 332; Southern Ry. v. Irvin, 191 Ala. 622, 68 So. 139; L. & N. v. Jenkins, 196 Ala. 144, 72 So. 68; Bailey v. Southern Ry., 196 Ala. 133, 72 So. 67; Hines v. Cooper, 205 Ala. 72, 88 So. 133. The doctrine of contributory negligence as matter of law, in failure to stop, look, and listen, is equally applicable at night as in the daytime, where an .engine carries no headlight. Bailey v. Southern Ry., supra. Defendant was clearly entitled to the affirmative charge as to subsequent negligence and willful or wanton conduct. Hines v. Champion, 204 Ala. 228, 85 So. 511; N. C. & St. L. v. Vincent, 190 Ala. 94, 66 So. 697; A. G. S. v. Smith, supra. .

SOMERVILLE, J. [1] If the jury believed plaintiff's testimony that defendant's train approached and went upon the crossing without any warning signals, and without any light visible on the cars, they could have properly found that defendant was guilty of simple negligence in handling its train on the occasion of this collision, giving to plaintiff a cause of action. Grauer v. A. G. S. R. Co., 209 Ala. 568 (12), 96 So. 915.

[2, 3] Very clearly, the evidence does not show that the trainmen were guilty of any negligence after the discovery of plaintiff's peril. The train was moving at a speed of about 4 feet a second, and a stop within 25 or 30 feet after plaintiff was sighted—that is, within six or seven seconds—permits no inference of culpability in that regard, as against the undisputed testimony of the trainmen that they took the promptest and most effective action available to prevent the collision. Nor can any inference of wantonness arise from the mere fact that the train was backed towards and onto the crossing at the very slow speed of 2 or 3 miles an hour, though without end lights, or flagging ahead, or warning signals from the ,engine, even though the crossing was a constantly used public highway. Bailey v. South Ry. Co., 196 Ala. 134, 72 So. 67; Grauer v. A. G. S. R. Co., 209 Ala. 568, 96 So. 915.

[4] It results that the propriety of giving the general affirmative charge for defendant depends upon defendant's showing by undisputed evidence that plaintiff was guilty of contributory negligence, as a matter of law, on the occasion of his injury; and it is to be presumed that the charge was given on that theory of the evidence.

Taking plaintiff's own testimony, in connection, of course, with all the other evidence, defendant's view of it is that contributory negligence was shown as a conclusion of law, (1) because plaintiff stopped his car 7 or 8 feet from the railroad track, and did not thereafter look or listen for trains while covering that distance up to the track; and (2) in any event, looking or listening, he was bound to have seen or heard this train after he stopped his car, and before he went on the track.

[5] 1. We are unable to say, as a matter of law, that plaintiff could have prudently driven his car, before stopping for the crossing, to a point nearer than 7 or 8 feet to the railroad track; or that, in traveling that distance to the track after starting his car, he could have seen or heard the approaching train any better than he could before starting.

[6] 2. We are also unable to say, as a matter of law, that, after stopping, plaintiff must have seen or heard, and did actually see or hear, the train, if in fact he then looked and listened.

[7] There was evidence that the garage light shone over the crossing, but there was

nothing to show with certainty that an ordinary observer, from plaintiff's position, must have seen a train without lights through the existing darkness.

[8] So, also, there was evidence that the train was "making noise," but nothing to show how much noise it was making; and we cannot judicially know, as we would of an ordinary train of cars running at high or even very ordinary speed, that this train of four box cars, pushed slowly along at a speed of 2 or 3 miles an hour, must have made enough noise to be heard by any one who' stopped and listened.

[9] In either of the above cases it would be difficult to escape the inference, as a matter of fact, that plaintiff would have both seen and heard this train if he had stopped and looked and listened; but the inference would be one of fact merely for the jury to draw, and not an imperative conclusion of law to be declared by the court.

These considerations lead to the conclusion that the issue of contributory negligence was one of fact which should have been submitted to the jury, and that the general affirmative charge for the defendant was erroneously given.

It results that the judgment must be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.