Argued April 1; modified April 28, 1936

# BURROUGHS *v.* SOUTHERN PACIFIC CO. ET AL.

(56 P. (2d) 1145)

*Robert A. Bennett* and *Lamar Tooze,* both of Portland (R. A. Bennett and Jaureguy & Tooze, all of Portland, on the brief), for appellant.

*Clarence J. Young,* of Portland (Alfred A. Hampson and Clarence J. Young, both of Portland, on the brief), for respondent Southern Pacific Company.

*Frank S. Senn,* of Portland (Senn & Recken, of Portland, on the brief), for respondent Inman-Poulsen Lumber Company.

BELT, J. This is an action to recover damages for injury to person and property caused by a collision between an automobile driven by plaintiff and a locomotive owned and operated by the defendant Southern Pacific Company. The defendant Inman-Poulsen Lum-

ber Company maintained the spur track on which the locomotive was running. At the conclusion of plaintiff's case in chief the trial court allowed the motion of each of the defendants for a judgment of involuntary nonsuit. The plaintiff appeals.

■■ The vital question is whether the plaintiff is guilty of contributory negligence as a matter of law. Such question requires a statement of the facts in the light most favorable to plaintiff. Plaintiff is entitled to rely upon every reasonable inference that can be drawn from the evidence. It is only when every reasonable-minded person would conclude from the evidence that plaintiff failed to exercise due care to avoid injury that a court should so declare as a matter of law. If the facts present a case where fair-minded persons might differ in their conclusions on such question, the issue of contributory negligence is a matter for the determination of the jury. The conduct of the plaintiff must be measured by the degree of care which an ordinarily prudent person would have exercised under similar circumstances. It is also fundamental that the degree of care required is commensurate with the danger involved. The difficulty lies not in the statement of the law but rather in its application.

■ The accident occurred about midnight on September 7, 1934, at the intersection of S. E. Grand avenue and S. E. Caruthers street, in the city of Portland. S. E. Grand avenue extends in a northerly and southerly direction and S. E. Caruthers street intersects it at a right angle. There are two street car tracks on Grand avenue and it is 36 feet in width from curb to curb. Caruthers street runs east and west and it is 31 feet in width from curb to curb. At the time of

the collision the plaintiff was driving south on the right side of Grand avenue at a speed of 15 to 18 miles an hour. He says that, immediately before the impact, he slowed down to a speed of from eight to 10 miles an hour. The switch engine was moving in an easterly direction on the spur track on Caruthers street. After the collision at a point a few feet west of the center of the street intersection, the engine and automobile moved a distance of only six or seven feet. We infer from such evidence and from the fact that the locomotive had traveled only 200 feet before the collision occurred that it was proceeding at a low rate of speed.

On the left of plaintiff there was a long woodpile varying from 9.2 feet to 14 feet in height, extending parallel to the east curb line of Grand avenue and to a point 28.8 feet north of the spur track. On plaintiff's right his view was obstructed by the office building of the Inman-Poulsen Lumber Company. This building is 35 feet wide and fronts on Grand avenue. It is approximately 31 feet from the north rail of the spur track and is 36 feet 4 inches from the west curb line of Grand avenue.

There is evidence tending to show that the traffic is heavy over Grand avenue and that no watchman or traffic signal device is maintained at the street intersection. Neither was there any brakeman with lighted lantern to signal the approach of the engine. It is well established, however, by the plaintiff's own testimony that he was thoroughly familiar with the situation as he had crossed over this street intersection twice daily for about two years. He was employed as a night watchman for the Kerr-Gifford Company and it was his custom, after quitting work at midnight, to drive down Grand avenue toward his home about 10 blocks

south of the intersection in question. In view of this evidence it can not reasonably be contended that the plaintiff relied upon any traffic signal device or watchman, although it may be that, had such been maintained, the collision would not have occurred.

The evidence further tends to show that the headlight on the engine was not burning, nor was there any sound of whistle or bell as the engine approached the street crossing. The night, however, was clear and an arc light was burning on the northeast corner of the street intersection. This light was hung about 25 feet above the street on an arm which extended out within a few feet of the center of the intersection.

Plaintiff was an experienced driver, 69 years of age, with normal sight and hearing. He had observed the switching operations of the defendant railroad company on this spur track on an "average of once or twice a week". The plaintiff thus testified as to how the accident occurred:

"A. Well, I was going home from the mill and I was driving south on Grand avenue, and I slowed to 15 or 18 miles an hour, and I looked to my right and there was no object in sight, and no engine, and I listened and there was absolutely no bell and no light on that engine. I did not see anything at all until I looked to my left and by the time I got my eyes onto my car and going, the engine was onto me. No bell whatever."

In the brief of respondent Southern Pacific Company the distance that a person could see west on the spur track from various points on Grand avenue is stressed, but all of these distances are based on daylight observations. It will be recalled that the collision in the instant case occurred at night. Needless to

say, the distance a person could see in daylight is no criterion for estimating his vision at night: *Lindekugel v. Spokane, P. & S. Ry. Co.,* 149 Or. 634 (42 P. (2d) 907, 99 A. L. R. 721). Nice calculations made in the quietude of the office after an accident has occurred may be persuasive in determining whether due care has been exercised, but ordinarily negligence can not thus be established as a matter of law. It is comparatively easy, in the light of subsequent events, to say that an accident could have been avoided if the parties involved had done this or that thing but the law does not apply such a rigid test: *Santoro v. Brooks,* 121 Or. 424, (254 P. 1019).

As a general rule this court, in railroad crossing cases, has denied recovery on account of contributory negligence. It is only in rare cases that the evidence has justified submission of the cause to the jury. In *Lindekugel v. Spokane, P. & S. Ry. Co.,* supra, and *Kirby v. S. P. Co.,* 108 Or. 290 (216 P. 735), verdicts were sustained. In those cases, however, the evidence showed certain conditions which might tend to divert from impending danger the attention of ordinarily prudent persons. In the case first cited an automatic wigwag signal was involved. It had been disconnected the day before the accident. Lindekugel, who lived near the track and was accustomed to the operation of the automatic signal, was injured while driving his automobile across the track in the night time. There was evidence to the effect that the disconnection of this electric signal tended to lull the plaintiff therein into a false sense of security. Likewise in the Kirby case the facts afforded a basis for the application of the so-called doctrine of "diverting influence". These cases are distinguishable on the facts from the one

at bar. Indeed, there is no case in this jurisdiction which is based upon a similar state of facts. It is noteworthy that in all but four of the railroad crossing cases before the court the collisions occurred in the daytime.

In the light of this record can it be said as a matter of law that plaintiff failed to exercise the degree of care that an ordinarily prudent person would have exercised under the same circumstances? We think not. While plaintiff was thoroughly familiar with the crossing, we doubt whether he could reasonably anticipate that the defendant company would cause this switch engine to cross a busy street at nighttime with no headlight burning, without ringing any bell and without any brakeman with lighted lantern to warn motorists of its approach. True, the lights of plaintiff's automobile were burning but, even so, it is sometimes difficult to see dark objects which unexpectedly come before you. Whether plaintiff, in the exercise of due care, ought to have seen or heard this engine approaching under such circumstances is a matter upon which reasonable-minded persons might differ. See the following railroad crossing cases in which the alleged contributory negligence of the plaintiff therein was held a question of fact for the jury since the accident occurred after dark and the headlight of the engine was not burning: *Mills v. Waters*, 198 Mich. 637 (165 N. W. 740); *Compton v. Western Ry. of Alabama*, 215 Ala. 576 (112 So. 148); *Dale v. Smith* (Mo. App.), 185 S. W. 1183; *Pogue v. Great Northern Ry. Co.*, 127 Minn. 79 (148 N. W. 889).

Respondents rely strongly on *Morser v. Southern Pacific Company*, 124 Or. 384 (262 P. 252)—a crossing accident case—wherein it was held that plaintiff

was guilty of contributory negligence as a matter of law. True, in that case the accident occurred on a dark, foggy night but the headlight on the electric train was admittedly burning. Morser, a pedestrian, saw the light of the approaching train but undertook to beat it across the track. This electric train was on scheduled time—which was known to Morser—and it was traveling at a high rate of speed on its own right of way. There is much less excuse for a pedestrian than for a motorist. The pedestrian has absolute control of his movements in a very limited space. He can stop in less time than is possible for any modern automobile with hydraulic brakes. In our opinion, *Morser v. Southern Pacific Company*, supra, can not be considered as a controlling authority for either party.

The rule of law announced by Mr. Justice Holmes of the United States Supreme Court in the much publicized case of *Baltimore & Ohio R. R. Co. v. Goodman*, 275 U. S. 66 (72 L. Ed. 167, 48 S. Ct. 24, 56 A. L. R. 645), that "if a driver can not be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle", has been abrogated in the later case of *Pokora v. Wabash Ry. Co.*, 292 U. S. 98 (78 L. Ed. 1149, 54 S. Ct. 580, 91 A. L. R. 1049), although the result obtained in the Goodman case was approved. In the Pokora case the alleged contributory negligence of the plaintiff therein was held to be a question for the jury, notwithstanding the fact that the accident occurred in the daytime. We agree with counsel for respondents that it is difficult to reconcile *Pokora v. Wabash Ry. Co.*, supra, with *Cathcart v. Oregon-Washington R. & N. Co.*, 86 Or. 250 (168 P. 308).

■ Another important fact, aside from the failure of the engine to have a headlight burning, is that the

accident in the instant case occurred on an infrequently used private industrial spur track within the corporate limits of a city. It is entirely reasonable that a higher degree of care should be required for a motorist to go over a grade crossing in the country where trains ordinarily are operated upon privately owned right of ways at a high rate of speed and on scheduled time. The cases distinguished between a street railway in the city and a steam railway in the country. It is not because the motive power in one instance is electricity and in the other steam. In determining whether contributory negligence has been shown as a matter of law, courts consider the surrounding conditions and the manner of operation of the trains: *McNab v. The United Railways Co.*, 94 Md. 719 (51 Atl. 421).

■ We are convinced that the trial court was right in allowing the motion for non-suit of the defendant Inman-Poulsen Lumber Co. It had no control over the operation of the switch engine. It did not employ the members of the switching crew nor were they subject to its orders. The Southern Pacific Company was an independent contractor in its relation to the Inman-Poulsen Lumber Company.

■ No error was committed in striking from the amended complaint allegations concerning the failure of the defendants to have a franchise to maintain its spur track on Caruthers street and that the unlawful use thereof was a menace and a hazard and constituted a public nuisance. We can see no causal connection between the accident and the alleged failure of the defendants to have such franchise. It would have occurred just the same had the defendants obtained a franchise. The liability, if any, resulted from the alleged negligent operation of the switch engine. It is

not contended that the spur track was improperly constructed. Hence we conclude that the existence or non-existence of this franchise was not the cause of the collision: See *Wilson v. Bittner*, 129 Or. 122 (276 P. 268, 64 A. L. R. 132), and *Speight v. Simonsen*, 115 Or. 618 (239 P. 542, 43 A. L. R. 1149); also *Smith v. Galveston-Houston Electric Ry. Co.* (Tex. App.), 277 S. W. 103 and 52 C. J. 270.

■ Plaintiff offered in evidence Rule 103-A of the Southern Pacific Company which provides: ''In all switching movements over public crossings not protected by gates or flagmen, a member of the crew must protect the crossing.'' We think no error was committed in rejecting such offer. The uncontradicted evidence showed that, at the time of the collision, the engine was not engaged in switching movements. Just prior to the accident, the switch engine had pushed two cars onto the siding of the Inman-Poulsen Lumber Company. After these two cars had been thus placed, the engine crew started for Brooklyn yards where the engine would be tied up for the night. The mere fact that the engine was moving over a spur track does not necessarily mean that it was engaged in ''switching movements'': *Waid v. Chesapeake & Ohio Ry. Co.*, 14 Fed. (2d) 90.

The judgment of involuntary nonsuit as to the defendant Southern Pacific Company is reversed and the cause remanded for a new trial. The judgment entered as to the defendant Inman-Poulsen Lumber Company is affirmed.

CAMPBELL, C. J., and ROSSMAN and KELLY, JJ., concur.