Argued December 7, reversed December 22, 1914.

# CHADWICK v. OREGON-WASHINGTON R. & N. CO.*

(144 Pac. 1165.)

**Master and Servant—Injury to Servant—Federal Employers' Liability Act—Contributory Negligence.**

1. Contributory negligence does not defeat a cause of action under the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65), as amended by Act of April 5, 1910, Chapter 143, 36 Stat. 291 (U. S. Comp. Stats. 1913, §§ 8657–8665), but may be shown in reduction of damages in the proportion which the contributory negligence bears to the sum total of all negligence affecting the transaction.

[As to employees entitled to protection under Federal Employers' Liability Act, see note in Ann. Cas. 1914C, 164. As to comparison of negligence under that act, see note in Ann. Cas. 1914C, 175. As to assumption of risk under such act, see note in Ann. Cas. 1915B, 481. As to what is "accident arising out of and in course of employment" within the act, see note in Ann. Cas. 1914D, 1284.]

*For the abrogation of the defense of contributory negligence by the Federal Employers' Liability Act, see notes in 47 L. R. A. (N. S.) 61 and 48 L. R. A. (N. S.) 987.          REPORTER.

**Master and Servant—Injury to Servant—Negligence—Evidence.**

2.   Whether an engineer operating a train on the main line negligently operated the same, in violation of the rules of the company, and thereby collided with a switch-engine, *held*, under the evidence, for the jury.

**Master and Servant—Regulation of Employment.**

3.   A railway company must establish suitable rules for the movement of its trains, not only to protect its employees, but to protect the general public patronizing it in its capacity as carrier.

**Master and Servant—Regulation of Employment—Custom.**

4.   A railroad company establishing regulations for the movements of its trains thereby establishes the standard by which care is determined, and though custom may interpret the regulations, it cannot contradict them.

**Master and Servant—Regulation of Employment—Custom.**

5.   In an action for injuries to a switch engineer in a collision with a train on the main track, evidence of custom as to the use of the tracks was inadmissible, in the absence of evidence disclosing such a situation as to render the custom applicable.

**Trial—Instructions—Questions of Law.**

6.   Under Section 136, L. O. L., declaring that all questions of law, including the construction of writings, are for the court, the construction of an order given to a railroad employee is for the court, and it is error to submit the question to the jury.

**Master and Servant—Injury to Servant—Contributory Negligence—Damages.**

7.   An instruction in an action under the Employers' Liability Act, that the jury must diminish the damages attributable to defendant's negligence in proportion to the amount of negligence chargeable to plaintiff, and, if there should be any difference in favor of plaintiff after the damages are reduced to a money value, the difference is the amount to be awarded, is in compliance with the statute on the subject of contributory negligence.

**Appeal and Error—Harmless Error—Evidence.**

8.   In an action under the Federal Employers' Liability Act as amended by Act April 5, 1910, for injuries to a switch engineer, the error in admitting evidence of custom, so affecting the construction of an order under which the engineer operated, as to show freedom from negligence, was reversible, as materially affecting the rights of the railroad company.

From Multnomah: George N. Davis, Judge.

Department 1.   Statement by Mr. Justice Burnett.

This is a personal injury action by Charles A. Chadwick against the Oregon-Washington Railroad & Navi-

gation Company, a corporation.   The facts are as follows:

The defendant is a railway corporation engaged in interstate commerce.   The plaintiff was a switch engineer in its employ stationed at La Grande, that being a division point.   Some miles west of La Grande on the defendant's railway is the town of Perry.   At that point a switch led from the main track to the mills of the Grande Ronde Lumber Company, and it was part of defendant's business to send switch-engines from La Grande to Perry to take to the mill empty cars and bring away loaded ones for transportation into other states.   On August 20, 1912, the plaintiff received an order from the defendant's train-dispatcher requiring him to take his engine and run as an extra train from La Grande to Perry, with right over all trains running east between those two points after meeting an extra freight train traveling east at La Grande, the order to be annulled at 6:30 o'clock P. M. of that day.   Under this order the plaintiff ran to Perry after having met the freight train in question at La Grande and went in upon the sidetrack leading to the mill, whereupon one of the train crew replaced the switch, so as to make the main track clear for the passage of other trains.   Hillgard is a place still farther west from La Grande than Perry, and, after the order was given to the plaintiff under which he went to Perry, the defendant issued another order to another engineer by the name of Buffington to take his engine and run as an extra from La Grande to Hillgard with right over all trains running east between La Grande and Hillgard after having met the freight train above named at La Grande.   Buffington started on his mission as directed.   Meanwhile, the plaintiff, after having spotted the empty cars he took to Perry, attached his locomo-

tive to some loaded cars by direction of the foreman of the crew, and in obedience to a hand signal given by the foreman, started to back out toward the main track. According to his statement he continued this movement without receiving any contrary signal until he was near the switch target controlling the switch by which he had come from the main track upon the branch to the mill, when, observing that it was closed against him, he made every effort to stop the train, but without success until it had moved far enough to make the tender to his engine overhang the main track. At this juncture he claims that Buffington was approaching the spot at a recklessly rapid rate of speed and that, although plaintiff signaled Buffington by a blast of the whistle indicating the plaintiff's dangerous situation, Buffington, on account of his reckless speed, negligently failed to stop his engine, so that the same crashed into the tender of Chadwick's engine, whereby the latter was injured. He charges negligence upon the defendant in this, that, although the switch target was so situated that it was not visible to him in coming around the curve to the main track until he was within about 30 feet of the same, the defendant, by its foreman, negligently failed to notify him that the switch was closed against him. A further ground of negligence is alleged to the effect that if the switch had been left open it would have so operated the block signal still farther east toward La Grande as to indicate to Buffington that the main track was not clear for him, and in addition to this he relies upon the reckless rate of speed charged upon Buffington as above stated.

The substance of the defendant's affirmative answer is that, according to the rules of the company, with which the plaintiff was thoroughly familiar, no en-

gineman, or other employee of the company in charge of any of its rolling stock, is permitted to use the main track of the defendant's railroad except in pursuance of written orders directing the same; that the order under which the plaintiff went from La Grande to Perry required him, and was understood by him to direct him, to go to the latter place with rights as against all trains moving to the east only; that when he reached Perry, although in advance of the time limit of 6:30 o'clock P. M., the order was fulfilled and gave him no further authority to use the main track; that other rules of the company, with which the plaintiff was familiar, required that all switches must be set to leave the main track clear after they had been used to take cars upon a branch or sidetrack, and that "enginemen must know that switches are properly set before they pull in or out of sidings or other tracks. When a train backs in on a siding to be met or passed by another train the engineman, when his engine is clear, must see that the switch is properly set for the main track." It charges that if the plaintiff had attended to the personal duty enjoined upon him by these rules he would have seen, not only that the switch was closed against him, but that the block signal affected by the switch showed clear for the main track and consequently indicated danger to one approaching on the side track as the plaintiff was at the time. It is further alleged, in substance, that it is required by the rules of the company, of which the plaintiff had knowledge, that, under all circumstances, before he attempts to go upon the main track, in the absence of explicit written orders, it is his duty to send forward a member of his crew with a flag a sufficient distance to signal and stop any oncoming train that would meet

the plaintiff in his excursion upon the main track, and that the plaintiff utterly failed to obey this rule. As to the movements of Buffington, the defendant alleges, in substance, that the duty enjoined upon the plaintiff, as a member of the switching crew attached to his engine, required him to set the switch for the main track after having gone upon the track leading to the mill, the effect of which would be, not only to make the main track clear, but also to set the block signals in such a manner as to notify Buffington that the main track was clear for him; that this duty was performed by the switching crew with the plaintiff so that the block signals invited Buffington to proceed; that he did so, and was moving at a moderate and reasonable rate of speed when the plaintiff negligently ran so near to the main track as to foul the same with his tender so suddenly that Buffington, although he used every effort to stop his train, was unable to do so until the collision ensued of which the plaintiff complains. In brief, the effect of the defendant's answer, after traversing the complaint in material particulars, is to charge that plaintiff's disobedience of the rules of the company, prescribed for the movement of its trains, with which the plaintiff was familiar, constituted the sole cause of the injury which he suffered.

The reply, after denying material parts of the answer, reiterates what is stated in the complaint to the effect that it was customary in switching operations at Perry to leave the switch open to the sidetrack, so that its operation upon the block signals would indicate to the train moving west that the main track was not clear, with the result that the block signals themselves would act as protection to the plaintiff without the use of a flag while moving upon the main track. After a

jury trial the plaintiff had a verdict and judgment, from which the defendant appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Charles E. Cochran, Mr. William W. Cotton* and *Mr. Arthur C. Spencer,* with an oral argument by *Mr. Cochran.*

For respondent there was a brief and an oral argument by *Mr. Arthur I. Moulton.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. This action is brought under the act of Congress of April 22, 1908, as amended by that body in 1910: U. S. Comp. Stats. 1913, §§ 8657–8665. It is there said:

"That every common carrier by railroad while engaging in commerce between any of the several states or territories * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. * * In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. * * "

It will be observed that by this statute contributory negligence is not an entire defense against an injured employee where any negligence of the defendant or any

of its other employees is shown which caused the injury of the plaintiff either in whole or in part. The utmost that can be claimed for the contributory negligence of the plaintiff is mitigation of damages. In short, the contributory negligence of the plaintiff, alone, will not operate to defeat his cause of action, but may be shown to reduce the damages which he might otherwise claim in the proportion which his own negligence bears to the sum total of all negligence affecting the transaction from every source: *Louisville etc. Ry. Co.* v. *Wene,* 202 Fed. 887 (121 C. C. A. 245); *Norfolk etc. Ry. Co.* v. *Earnest,* 229 U. S. 114 (Ann. Cas. 1914C, 192, 57 L. Ed. 1096, 33 Sup. Ct. Rep. 654).

2. The defendant assigns as error the refusal of the court to grant its motion of nonsuit at the close of plaintiff's case. The contention for the defendant is that if the plaintiff had obeyed the rules and the order under which he was acting he would have gone to Perry, entered upon the sidetrack, set the switch for the main track behind him, and would have remained upon the sidetrack until he had orders to move or, in default of the same, would have proceeded toward the main track only under protection of a flag; that, being responsible personally, under the rule of which he had knowledge, for the correct adjustment of the switch, it was specially incumbent upon him alone in the ultimate analysis of the rule to see that the switch was adjusted for the main track with the result and effect that the block signals would advise Buffington that the main track was clear and invite him to proceed; that the plaintiff's action in going upon the sidetrack brought about this result and worked out that indication to Buffington; that plaintiff violated his duty in returning to the main track without knowing for himself the adjustment of the switch and so, by his own act alone, worked

out the situation which resulted in his injury. It is argued that being aware of the situation of the switch and its target he knew that, on account of a nearby bluff around which the sidetrack curved, it was impossible to see the target until he was within a short distance of it, and that it was his duty in returning toward the main track to so control his train as to be able to perform his duty of seeing for himself about the adjustment of the switch. If this were the whole case the court might well have directed a judgment of nonsuit, for it is manifest that the plaintiff up to this point had entire control of the situation and relied, not upon his fellow-employees obeying the rules of the company respecting the setting of the switch, but upon the probability that they would disobey it. It certainly could not be charged as negligence upon the company that it had prescribed a reasonable rule governing the adjustment of switches and that the fellow-servants of the plaintiff had obeyed the rule and had not notified him that they had observed it. It is plain that, without any rights, as against a train moving to the west, the plaintiff proceeded in direct violation of his order, without attempting to protect himself by a flag, relying upon his supposition that the rule about setting the switches had been disobeyed, and hence created a situation of danger to himself.

On the question of nonsuit it therefore becomes necessary to consider the duty of Buffington under the rules of the company. These rules under which the plaintiff was operating, and with which he has admitted himself to be familiar, having passed two examinations on the same, were introduced in evidence without objection. It may be explained that the block system of signals in operation at Perry were so arranged that in approaching that place from the east an engineman

would first come to what is called the distant signal, which normally shows the same as what is called the home signal some 2,000 feet nearer the switch in question. In .the daytime, as it was when the accident happened, when the arm of the block signal hung down it indicated that the main track was clear, and when the arm was extended horizontally above the rails it indicated that the track was obstructed, and required the engineman approaching the home signal to stop. These block signals are affected not only by the movement of the switch, but also when an engine on the sidetrack crosses what is known as the Webber joint near the switch. Passing this point in going to the switch throws up the arm of the block signal to indicate danger to an engine on the main track, and this is what the plaintiff did after Buffington had passed the distant signal and before he arrived at the home signal. Buffington is uncontradicted in his testimony that as he approached Perry from La Grande he came to the distant signal which indicated a clear main track and invited him to proceed; that as he neared the home signal it suddenly assumed the position indicating stop and that he immediately sanded the track, shut off the steam, applied the airbrakes, and did everything else possible to stop his engine before colliding with Chadwick's tender. The contention of the defendant is that no duty rested upon Buffington with respect to Chadwick, under the circumstances, until the former was aware of the latter's situation of danger, and that, having done all that he could to prevent the injury when the danger became apparent, his whole duty was performed to the exoneration of the defendant.

Rule 302 reads thus:

"Enginemen finding a distant signal· at 'caution' must immediately bring their trains under control, and

be prepared to stop before reaching the home signal. They are reminded that although the distant signal indicates the position of the home signal, the home signal may assume the stop position after the distant signal has given the clear indication, and while the train is between the distant and home signal. For this reason enginemen and trainmen must be on the alert, prepared to bring the train to a stop if the home signal indicates stop, and be governed by rule 504.''

Rule 504, to which reference is there made, would allow Buffington to proceed only under protection of a flag, under such circumstances. Rule 661 says that trains or engines must be run to, but not beyond, a signal indicating ''stop.'' 662 is in these words:

''If a 'proceed' signal, after being accepted, is changed to a 'stop' signal before it is reached the stop must be made at once.''

It was thus the duty of Buffington, under rule 302 above quoted, to be on the alert when passing through the block adjacent to Perry, and not to rely entirely upon the position of the distant signal. On the contrary, it was his duty to be prepared to bring his train to a stop if the home signal so indicated, notwithstanding the position of the distant signal he had just passed. Whether he was thus prepared to obey the rule and stop or not was a question of fact to be determined by the jury. His duty toward Chadwick in the situation disclosed by the testimony did not begin only when he saw Chadwick. His obligation in that respect began earlier, under the regulations mentioned, and if he was running at such a reckless rate of speed as to render it impossible to comply with the rule requiring him to stop at the home signal, although the distant signal permitted him to proceed, his negligence in that respect would be a contributing cause to the

injury of Chadwick. The jury had a right to believe that Buffington was negligently moving so fast that he could not stop in time to avoid injury to Chadwick. This circumstance properly defeated the motion for a nonsuit.

3, 4. It was contended that the court was in error when it allowed the plaintiff to prove that it was customary when using the track to the mill at Perry to leave the switch adjusted for the sidetrack so as to make the block system operate in lieu of flag protection against trains moving on the main track, the purpose being to prove that Chadwick was not negligent in moving back to the switch after he had gone to the mill. It is requisite that the defendant should make. suitable rules for the movement of its rolling stock. This obligation is due, not only to its employees, but also to the general public who patronize it in its capacity as a common carrier. Reasonable regulations thus devised become the standard by which care or negligence is determined. Custom may be used as a means of interpretation, but cannot be admitted to contradict explicit rules and positive orders. This is on the principle that as the admitted rules known to the plaintiff govern the relation between him and his employer, they are in a sense part of the contract of his employment within the meaning of such cases as *Pennsylvania Co.* v. *Whitcomb,* 111 Ind. 212 (12 N. E. 380). By analogy, therefore, the rule applies as laid down in subdivision 12 of Section 727, L. O. L., that evidence may be given on the trial of "usage to explain the true character of an act, contract or instrument where such true character is not otherwise plain; but usage is never admissible except as a means of interpretation."

5. Moreover, the only showing made by the plaintiff on this point was that the custom alluded to was used

in connection with train orders directing the engine-man to go from La Grande to Perry and return with superior right over all trains running both east and west.   Under such circumstances if every train using the main track acted in subordination to the order, no one would be affected by leaving the switch open, but there was no showing on behalf of the plaintiff that it was customary to leave the switch open when the engineman was ordered, as in this instance, to go only from La Grande to Perry without any directions about using the main track in returning.   Quite a different situation is presented where the plaintiff had a right only as against east-bound trains and not against other trains running to the west.   In this case there was no dispute in the testimony about the wording or exist-ence of the rules or of the order under which the plain-tiff operated.   The plaintiff's testimony about this order reads in part as follows:

"Q. In other words, you construed that order just the same as if it gave you the right over west-bound trains?

"A. Yes, sir.

"Q. When as a matter of fact, it just gave you a right over east-bound trains, and that was all?

"A. Yes, sir, that is right.

"Q. Now, if you had not construed this order that you had that day to mean that you had the right over trains both ways, you wouldn't have come out on the main line, would you?

"A. No, sir."

Under these circumstances the court was in error in allowing the testimony about custom relating to the switch at Perry: First, because it is improper to rely upon custom to contradict plain rules and orders; and second, because no situation was disclosed by the tes-

timony to which evidence of the custom as presented would attach.

6. Allied to this question is an assignment of error to the effect that the court left to the jury the construction of the order under which the plaintiff was operating. The complaint of the defendant on this point is based upon an instruction, wherein, after quoting the order already mentioned, the court made this statement to the jury:

"As a matter of law, under the defendant's rules, it became and was the duty of the crew in charge of the engine foreman to close the switch after plaintiff had passed onto it off the main line at Perry, and it was the duty of the crew, including the plaintiff, to know this. So if you find from the evidence in this case that the switch was so closed, then the defendant would not be guilty of negligence in that behalf.

"The court instructs you that under the order just read to you that it was the duty of the plaintiff to wait at La Grande until he had met train extra 515 running east, after which he had the right as against all trains running east to proceed westward to Perry, providing he could get there and off the main line before 6:30 P. M. This order does not protect plaintiff from trains west or running in the same direction as plaintiff, and it would be his duty at all times to protect himself in accordance with the rules of the company as against all trains running west, and it is conceded that the train which collided with plaintiff's engine was running west.

"The question presented to you is this: Did this order mean that plaintiff was to proceed to Perry after meeting extra 515 at La Grande, providing he could get there before 6:30 P. M., go in on the switch and not to come out or foul the main line except on further orders or flag protection, or did it mean that plaintiff was to proceed to Perry, after meeting extra 515 at La Grande, and there engage in switching operations with the use of the main line without flag protection

as against all trains both east and west bound until 6:30 P. M.

"If you should be satisfied that said order has the former meaning then plaintiff would not be entitled to recover. If you should find that the said order has the latter meaning, and if you further find that defendant was guilty of negligence in any one of the particulars alleged in the complaint, and defendant was engaged in interstate commerce as defined by the court, then the plaintiff would be entitled to recover."

Section 136, L. O. L., lays down the rule thus:

"All questions of law, including the admissibility of testimony, the facts preliminary to such admission, and the construction of statutes and other writings, and other rules of evidence, are to be decided by the court, and all discussions of law addressed to it. * * "

It was palpable error, therefore, for the court to leave the construction of the order to the jury.

7. The defendant sought to have the jury instructed on the question of the measure of damages to the effect that if the plaintiff's negligence was equal to or exceeded that of the defendant they must find for the defendant. The court, however, instructed the jury, in substance, that it was the duty of the jury to diminish or reduce the damages attributable to the defendant's negligence in proportion to the amount of negligence justly chargeable to the plaintiff, and if there should be any difference in favor of the plaintiff, after the damages were reduced to a money value, such difference should be the amount of their verdict. The instruction of the court was in substance a compliance with the federal statute on that subject, which requires that in case of contributory negligence it shall not be a defense, "but the damages shall be diminished by the jury in proportion to the amount of negligence

74 Or.—3

attributable to such employee.'' Thus it will be seen that under that statute it is not a question of majority of negligence, but rather one of proportion. Any negligence of the defendant working injury to the plaintiff would therefore entail some damages. For illustration, let us suppose that both parties were equally negligent in the estimation of the jury and that the actual damages of the defendant were properly assessable at $2,000. In such a case the verdict should be for the plaintiff in the sum of $1,000, for the reason that his negligence is one half of the sum total of all the negligence of both parties.

8. The plaintiff's effort to prove custom, and thus to affect the construction of the order under which he operated, was for the purpose of showing that he himself was free from negligence and had the effect to put him in the light of one acting strictly according to the requirements of the occasion. This had its direct effect on the question of damages, because that is controlled by the proportion which the plaintiff's negligence bears to the whole negligence involved. In this respect the rights of the defendant were materially affected, in that the negligence of the plaintiff was materially diminished, leading to the increase of the proportion of damages assessed to the defendant.

The conclusion is that the judgment of the Circuit Court must be reversed, and the cause remanded for further proceedings.   Reversed and Remanded.

Mr. Justice Moore, Mr. Justice Ramsey and Mr. Justice McNary concur.