Argued December 8, 1971, reversed with instructions January 12,
petition for rehearing denied February 8, 1972

## LANDOLT, *Appellant, v.* THE FLAME, INC. ET AL, *Respondents.*

492 P2d 785

*Thomas O. Carter,* Portland, argued the cause for appellant. With him on the briefs were Rask & Hefferin, Portland.

*Walter J. Cosgrave,* Portland, argued the cause for respondents. With him on the brief were Maguire, Kester & Cosgrave, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action for personal injuries sustained by plaintiff when he went through a glass door in a hasty exit from a bar after a fistic altercation. The primary negligence alleged is that the glass exit door would not open "out" with "exit travel" in violation of the county building code.

Plaintiff appeals from an order setting aside a jury verdict of $6,098.75 and granting defendants' alternative motion for a new trial "on all grounds set forth in the motion."[1] Those grounds may be summarized as follows:

1. Error in submitting to the jury the issue of building alterations in violation of the building code when (a) they were not pleaded and (b) there was no "proper evidence" that such alterations were made by defendants.

2. Error in admitting as evidence the county building code, the application for a building permit, and the plans for alterations of the building, including the door in question, which was shown as opening "out."

3. Error in the giving of instructions on (a) violation of a statute as negligence, (b) negligence per se, and (c) emergency.

4. Error and "irregularity in the proceedings" in denying defendants' motion for mistrial for plaintiff's "repeated references" to one of defendants' witnesses as defendants' "bouncer."

---

[1] Defendants also moved for a judgment notwithstanding the verdict upon the ground that the complaint failed to state a cause of action and that there was insufficient evidence to support a finding of negligence and causation. Defendants have not cross-appealed from the order denying that motion.

Because the order granting a new trial must be affirmed if any one of these grounds is well taken, it is necessary to consider each of them. Before considering these various contentions, however, the facts may be briefly summarized.

Plaintiff and another man visited defendants' bar. Plaintiff testified that he objected to certain language used by another man, who was also sitting at the bar, because of the presence of a lady, also seated at the bar. He and his friend testified that the other man then started a fight in the bar and that they then decided to "get out of there."

Plaintiff then ran out of the bar, put his hands on the metal "push bar" across the glass exit door, bending the "push bar" badly, and went on through the exit door, which did not open "out" with "exit travel," as required by the county building code.

Defendants' witness testified, on the contrary, that plaintiff started the fight. Defendants admitted that the glass exit door did not open "out," but did not admit that this was in violation of the building code.

Defendants did not, however, deny plaintiff's medical testimony, which was to the effect that plaintiff's hands, fingers and wrist were badly cut, requiring the removal of many small pieces of glass and resulting in some permanent injury.

1. *The trial court did not err in submitting to the jury "the issue of the building alterations."*

   a. *Under the allegations of plaintiff's complaint it was not error to submit that issue to the jury.*

After alleging that "at all times mentioned herein" defendant The Flame, Inc. was the operator of the

restaurant and lounge and that defendants Ratoza and Maras were the owners of the building, plaintiff's complaint alleges:

"That it was the duty of the defendants, and each of them, to provide exits from the premises at 12125-12133 NE. Halsey Street, with exit doors which would open with the exiting traffic. Defendants, and each of them, did not perform said duties but wholly neglected the same."

and also:

"That on or about the 7th day of October, 1969, the plaintiff was a business invitee on the premises of 12125-12133 NE. Halsey Street, known as The Flame Restaurant and Lounge and in attempting to exit from said premises, collided with a glass exit door installed in violation of Section 3303 (b) of the Multnomah County Building Code, which said door, instead of opening with the exiting traffic, opened against the exiting traffic and shattered on contact, causing this plaintiff serious and permanent injuries as hereinafter set forth."

Defendants contend in their brief that:

"It is well-established that in order to show negligence per se for violation of a statute or ordinance, Plaintiff must show: (a) that a statute applied, (b) that the statute was violated, (c) that the defendant was responsible for the violation, and (d) that the violation of the statute was the proximate cause of his injury. *Smith v. Portland Traction Co.*, 226 Or 221, 225, 359 P2d 899 (1961).

"The precise issue here, then, is whether the phrase 'installed in violation of Section 3303(b) of the Multnomah County Building Code,' in a paragraph of the complaint setting forth another theory of liability—that of the possessor of real property to a business invitee for defects in the land—is to be elevated by any rules of favorable construction

into the status of a full and sufficient exposition of an independent basis of recovery.

"* * * * *

"But the issue is not the sufficiency of the complaint to state a cause of action but the question of the sufficiency of the complaint to sustain the relevance of certain profferred evidence which arises on appeal from an order granting a new trial.

"Plaintiff contended during the trial that the complaint set forth an additional basis of liability, one not readily apparent from the face of the complaint. This contention was made at a time when defendants would be forced to bear alone liability with respect to which they might have been entitled to indemnity through timely tender."

■ From an examination of the complaint, however (as quoted above), as well as from an examination of the transcript of the trial, it appears that plaintiff did not contend that the allegations relating to the building code "set forth an additional basis of liability," but that plaintiff's theory of liability was that defendants, as the operators of the bar and the owners of the building, were negligent in owning and operating a place of public assembly with an exit door which would not open "out" with the exit travel. The allegation that the door had been installed in violation of the building code did not set forth "an additional basis of liability." On the contrary, that allegation was part and parcel of the same theory of liability.

■ As for the suggestion that under such "an additional basis of liability" there might be a difference in the liability of the defendants and that they "might have been entitled to indemnity through timely tender," the answer is that: (1) for the reasons just stated, these allegations did not state "an additional basis of liability"; (2) an examination of the record, including the

instructions, shows that the case was not submitted to the jury on the theory that plaintiff was relying upon any such "additional basis of liability"; (3) at the beginning of the trial defendants' counsel stipulated that "if there was any liability, it would be the liability of both defendants" and (4) the possibility of a tender of defense to some third party is not a reason why this plaintiff was not entitled to have his case submitted to the jury under these pleadings, at least under the facts and circumstances of this case.

Defendants also contend that plaintiff's allegations that the glass exit door was installed in violation of the building code was a "conclusion of law" and was "insufficient for any purpose." It will be noted, however, that plaintiff alleged the specific section of the building code involved and also alleged that the exit door violated the code in that "* * * instead of opening with the exiting traffic, [it] opened against the exiting traffic. * * *." Although such an allegation might have been subject to demurrer or to a motion to make more definite and certain, no such motion or demurrer was filed.

■ In this connection, it must be kept in mind that once a building code becomes effective, persons who own and operate buildings which have been built since adoption of the code or which have been altered in such a manner as to become subject to the code are responsible for injuries caused by doors installed in such a manner as to violate the building code, regardless of whether such a person was the same person who built or altered the building or who installed the particular door. Cf. Annot. 8 ALR2d 218, 224.

■ Accordingly, we hold that, after the verdict, plaintiff's complaint was sufficient to entitle plaintiff

to have submitted to the jury the issue of whether the exit door had been installed in violation of the building code. See also *Rohner et ux v. Neville,* 230 Or 31, 33, 365 P2d 614, 368 P2d 391 (1961); *Western Feed Co. v. Heidloff,* 230 Or 324, 343, 370 P2d 612 (1962).[9]

It follows that the trial court did not err in submitting that issue to the jury.

b.  *Under plaintiff's evidence it was also not error to submit to the jury the issue of whether the exit door violated the building code.*

Defendants contended on trial that provisions of the county building code relating to exit doors applied only to buildings built or altered since the adoption of that code and did not apply to then existing buildings.

Plaintiff offered evidence from which the jury could properly find: (1) that in 1965 the county building code provisions became effective requiring that exit doors of premises "serving an occupant load of 50 or more" should "swing in the direction of the exit travel"; (2) that in 1966 defendant The Flame, Inc., secured a building permit for alterations of the building under plans which included the door in question and showed that it would open "out" with exit travel; (3) that the premises in question were public premises with an "occupant load" of more than 50 persons, and (4) that plaintiff was injured when he went "through the glass door" in attempting to exit from the building. It was also stipulated that at the time of the accident

[9] In so holding, we have not overlooked Farrell v. Kirkwood, 69 Or 413, 415, 139 P 110 (1914), as cited by defendants, but believe that it does not hold to the contrary, at least under the particular allegations and facts in this case, as compared with those of that case.

the door did not open "out" with exit travel and that "if there is any liability in this case, it would be the liability of both [defendants]."

■■ We hold that this evidence was sufficient to entitle plaintiff to have the issue whether the door had been installed in violation of the building code submitted to the jury if the building code, building permit and plans for alterations were properly received in evidence, as next discussed. We also hold that, depending upon the determination of that question, there was "proper evidence" from which the jury could properly find that defendant "The Flame, Inc." was responsible for the alterations or modifications, including the exit door. At the beginning of the trial it was stipulated that if there was any liability, it was the liability of both defendants. Accordingly, the trial court did not err in submitting the case to the jury because of that contention in defendants' motion for new trial.

2. *The court did not err in admitting into evidence the county building code, the building permit and the plans for alterations, including the exit door.*

■ The court admitted into evidence three written exhibits, which included (1) Section 3303 of the Multnomah County Uniform Building Code, providing that "exit door shall swing in the direction of exit travel when serving * * * an occupant load of 50 or more," as adopted June 20, 1965; (2) the application for building permit by J. M. Heaf, president of defendant The Flame, Inc., dated December 10, 1965, together with (3) plans entitled "Remodel of 'The Flame Restaurant & Lounge,' " originally dated December 7, 1965, as revised February 18, 1966, showing the exit door swinging out in the direction of the "exit travel."

Defendants contend that "the test of relevance is whether or not the evidence tends to prove an issue that is material to the case" and that "* * * the mere inclusion [in the complaint] of the phrase 'installed in violation of * * * the Multnomah County Building Code' does not state a cause of action or a basis of liability, * * *" with the result that "* * * any evidence tending in its support is therefore irrelevant." As previously pointed out, however, it was not necessary in this case that this allegation "state an independent cause of action or an additional basis of liability," but that allegation was proper under plaintiff's theory of recovery and defendants have admitted that "the sufficiency of the complaint to state a cause of action" is not an issue on this appeal. It follows, in our opinion, that these written exhibits were relevant to the issues which were "material to the case."

Defendants also contend on this appeal that the accident in this case was not within the area of risk sought to have been avoided by this ordinance, which was "to prevent persons from being trapped by a panic-stricken mob against inward-opening doors when trying to escape a threatened fire or the collapse of the building," rather than "to escape the real or imagined threat of an attacker or a barroom brawl."

■ We are not prepared to hold, at least on this record, that an ordinance requiring exit doors in public buildings to "swing in the direction of the exit travel" has a purpose as limited as that now contended by defendants or that it was error for this reason to admit this building code section in evidence, particularly in view of the fact that defendants made no such contention in objecting to the admission of this evidence or otherwise at the time of trial, insofar as is shown by the record of this case.

■ On the contrary, defendants' only contentions at that time were that these exhibits were "not relevant under the pleadings"; that the code "applies only to new construction," not to existing buildings, and that the complaint did not allege construction or installation of the door by defendants in violation of the building code, but only that defendants maintained the premises. For reasons previously stated, however, the jury could properly have found from plaintiff's evidence, including these exhibits, that defendants were responsible for alterations which included the installation of this door.[9]

■ In addition, defendants contend on this appeal that another section of the building code provides that it has no application to "non-structural alterations less than 25 per cent of the value of the existing structure or building." That section of the building code was not included in the portion of the code offered by plaintiff and defendants did not offer in evidence that section of the code. Defendants also made no such contention either in objecting to the admission of the sections of the building code offered by plaintiff or otherwise at the time of trial, insofar as the record reveals. Had such an objection been made it would appear from the extensive nature of the plans for renovation of the building that plaintiff might well have been able to offer proof satisfying the required percentage of value.

---

[9] The responsibility of defendant The Flame, Inc. was shown by the fact that after making application for a building permit, with plans for alterations of the building, including the door in question (subsequent to the effective date of the building code), it operated the lounge and restaurant. The responsibility of defendants Ratoza and Maras was shown by the fact that at the time of the accident they were owners of the building and by the stipulation that "if there is any liability in this case, it would be the liability of both [defendants]."

We therefore cannot properly hold on this appeal that for this reason it was error for the trial court to admit the portions of the code offered by plaintiff. See *Ford v. Allum,* 251 Or 346, 347, 445 P2d 511 (1968); *Harryman v. Roseburg Fire District,* 244 Or 631, 633, 420 P2d 51 (1966).④

3. *The court did not err in its instruction to the jury.*

■ In defendants' alternative motion for a new trial it was contended that the court erred in the giving of an instruction upon the violation of a statute [ordinance] as negligence and upon negligence per se. Exceptions to those instructions had been taken by defendants upon the grounds that "there was no violation of a statute [ordinance] involved in this case" and that "there was no basis upon which [those] instructions could be given."

---

④ Klein v. Montgomery Ward & Co., 235 Or 315, 323, 384 P2d 978 (1963), relied upon by defendants, is not controlling in this case. It is true that in *Klein* the complaint alleged that the stairway on which plaintiff fell did not have a handrail as required by the Portland Building Code and one of the assignments of error was that the trial court improperly sustained objections to the offer in evidence of portions of that ordinance. In that case, however, objections were made at the time of trial that the Portland Building Code included specific provisions which limited its effect to "structural" alterations of existing buildings and to other alterations with a cost totaling a specified percentage of the building's value, whereas plaintiff had offered no evidence of building alterations which satisfied those specific requirements.

In this case, on the contrary, no such objections were made by plaintiff at the time of trial. Sections of the county building code with similar restrictions were not included among the sections of the code which were offered in evidence by plaintiff. Neither were any such sections of the code called to the attention of the trial court by defendants in this case, if any such sections then existed. Thus, in this case plaintiff was not called upon to offer evidence that the alterations to this building satisfied any similar provisions of the county building code, which he might well have been able to do if objections had been made on trial based upon the existence of any such requirements.

For the reasons previously stated, however, plaintiff's pleadings and evidence were sufficient to provide a proper basis for submission to the jury of plaintiff's contention that defendants then were negligent as owners and operators of a "place of public assembly" with an exit door for which they were responsible and which did not open "out" with exit travel, as required by the county building code, and that this involved the violation of an ordinance. It follows that there was no error in the giving of these instructions.

Although not a ground of defendants' motion for a new trial, defendants also contend on this appeal that it was error to instruct the jury that it was for it to decide, as a question of fact, the issue whether the building code was applicable to this case. No exception, however, was taken to that instruction.

It may be that the application of such provisions of a building code to the facts of a case is ordinarily a question of law to be decided by the trial judge, rather than submitted to the jury, if the facts are undisputed. In this case, however, no contention was made by defendants at the time of trial that the provisions of the building code relating to exit doors were not applicable to this exit door if defendants were responsible for its installation. On the contrary, defendants' only contentions at the time of trial on this subject were that the building code was not "relevant" to the issues arising from the allegations of plaintiff's complaint and that it applied only to new buildings or to alterations which were not shown to have been made by the defendants.

*The "emergency" instruction.*

As a further ground for defendants' alternative motion for a new trial, defendants contended that the

trial court erred in "the giving of an instruction on [the] emergency doctrine." At the time of trial defendants took an exception to that instruction on the ground that "it is not applicable under the facts of this case, any emergency being created by plaintiff's sudden urge to leave the premises, it being his whole theory that he had no other alternative course open to him except to go through the wall."

On this appeal defendants concede that "the form of the [emergency] instruction is not in question here," but contend that such an instruction should only be given in cases "where it clearly applies." Defendants say that plaintiff's contention that the emergency was "an unprovoked attack" by a third party has no basis in fact in that "plaintiff, by his own testimony, indicates that he initiated the altercation when he attempted to persuade a male patron at the bar from using what he felt were 'filthy words' in a conversation with a female patron."

The jury could have properly found from plaintiff's testimony, however, that such a remonstrance by him did not either justify the attack or "initiate" the altercation; that plaintiff was without fault; that he was indeed "attacked" by the "third party" and that in the resulting "altercation" plaintiff was in danger of being hurt.

While actions for injuries arising out of motor vehicle accidents provide most of the cases involving an application of the "emergency" rule, that rule properly applies in any situation in which a person charged with active negligence is required to act in an emergency. In this case defendants charged plaintiff with contributory negligence "in failing to exercise his

senses and faculties for his own safety" and "in failing to keep a proper lookout" as he made his hasty exit.

We hold that in this case the jury could have properly found from plaintiff's testimony that upon being attacked he was "suddenly confronted with an emergency, through no negligence on his own part, and compelled to act without opportunity for reflection," in the terms of the instruction as given by the trial court and within the proper application of the "emergency" rule. See *Frangos v. Edmunds,* 179 Or 577, 607-608, 173 P2d 596 (1946); and cases cited therein. See also Prosser, Law of Torts 169, § 33 (4th ed 1971), and 2 Harper and James, The Law of Torts 938-940, § 16.11 (1956).

It is true that the "emergency" instruction has been described as one that is sometimes "treacherous" and that the refusal to give such an instruction may seldom be reversible error because the usual instruction on negligence may sufficiently cover what a reasonably prudent person would do under all circumstances, including those of sudden emergency. *Rankin v. White,* 258 Or 252, 482 P2d 530 (1971), quoting *Evans v. General Telephone Company,* 257 Or 460, 479 P2d 747 (1971).

Nevertheless, it is not error to give the "emergency" instruction in a proper case and where such an instruction has been properly given and the trial judge has later granted a motion for a new trial based, in part, upon the giving of such an instruction, we have reversed the trial court and reinstated the jury verdict. See *Jones v. Burns,* 257 Or 312, 478 P2d 611 (1970). See also *Cederoth v. Cowles et al,* 224 Or 403, 412-13, 356 P2d 542 (1960).

For all of these reasons, we hold that the trial judge did not err in his instructions to the jury in this case and, conversely, that it was error to grant defendants' motion for new trial insofar as that motion was based upon the giving of such instructions.

4. *The court did not err in denying defendants' motions for a mistrial.*

■ As a further ground in support of defendants' motion for a new trial, defendants contended that the court erred in the denial of defendants' motions for a mistrial and that there was "irregularity in the proceedings" by which they were "prevented from having a fair trial" because of "plaintiff's repeated reference to a witness for the defendants as the defendants' 'bouncer' when there was no evidence or basis for such claim or improper comment."

The record shows that in describing the altercation in defendants' bar plaintiff testified that the man sitting next to him (not the man who started the fight, according to plaintiff) said that "he was the 'bouncer.'" Defendants then moved for a mistrial. The trial judge ruled at that time that the statement was hearsay, but not prejudicial, and denied defendants' motion. The trial judge then instructed the jury to "completely disregard" that statement and cautioned plaintiff "not to testify as to what other people said."

Although plaintiff and his witnesses made no further similar statements in his opening case, defendants did not let the matter rest. Instead, defendants called that same person, a "security consultant" as a witness to testify that plaintiff started the fight. That witness also testified that he was not employed by defendants, but that plaintiff and his friend "assumed—

they thought I was the 'bouncer.' " At that point plaintiff objected and the trial judge sustained the objection.

Finally, in rebuttal, plaintiff was asked by his attorney whether defendants' witness said to him that "he was the 'bouncer.' " Defendants then renewed their motion for mistrial and the question was then withdrawn.

If plaintiff's complaint had alleged that defendants, through their employees, were negligent in any way on the evening of the accident these remarks might possibly have provided grounds for a mistrial, in the discretion of the trial judge. In this case, however, the sole charge of negligence related to defendants' responsibility for the failure of the exit door to open "out" with the "exit travel."

It is difficult to see how, in such a case, these remarks could have denied defendants a fair trial, particularly in view of the fact that after the trial judge told the jury to disregard the original remark, defendants themselves opened up the matter again and thus were responsible for what they charge to have been the "repeated" reference to their witness as defendants' "bouncer."

It follows that the trial court did not err in denying defendants' motion for mistrial and that any such "irregularity" was not shown by defendants to have been one "by which defendants were prevented from having a fair trial" on the charges of negligence as alleged in plaintiff's complaint.

5. *In the absence of error in the conduct of the trial, defendants' motion for a new trial was improperly allowed.*

It is true, as contended by defendants and as

held by this court in *Armstrong v. Stegen,* 251 Or 340, 342, 445 P2d 509 (1968), that:

> "A trial judge after judgment may correct his own errors committed in course of trial by granting a new trial. ORS 17.610 (7). This court has held that the granting of a new trial rests within the sound discretion of the trial judge, and that an order will be reversed only for a manifest abuse of that discretion."

■ It is also true that an order granting a new trial will not be reversed if it is supported by any one of the grounds stated in the motion for new trial. *Ditty v. Farley,* 219 Or 208, 211, 347 P2d 47 (1959).

Nevertheless, it is well established, as held in *McIntosh v. Lawrance,* 255 Or 569, 572, 469 P2d 628 (1970), that:

> "* * * A new trial may be granted only where there is a basis for a finding by the trial judge of substantial prejudicial error. * * *."

In addition, and as held in *Stanich v. Buckley et al,* 230 Or 126, 129, 368 P2d 618, 619 (1962):

> "* * * [I]t is our duty to reverse the trial court if the order granting the new trial is based upon an erroneous conception of the law."

At the time of trial the trial judge agreed with defendants' contention that plaintiff's complaint was insufficient to provide a proper basis for proof of violation of the building code and strongly suggested to plaintiff's counsel that he take a nonsuit and then file an amended complaint unless he desired to proceed on a theory of common law negligence. He also suggested later that plaintiff ask leave to amend his complaint on trial to allege the date of the installation of the door, that it was installed in violation of the build-

ing code and which of the defendants he claimed to have been responsible for installation of the exit door. Plaintiff's counsel contended, however, that the complaint was sufficient under his theory of the case; that he was unable at that time to prove which defendant actually installed the door, and that in any event, it had been stipulated that any liability was the liability of both defendants.

The trial court then made it clear that in the event that plaintiff obtained a verdict he would set it aside, but that if plaintiff so desired, his case would be submitted to the jury so that plaintiff could then appeal, since he had gone to the expense of calling medical witnesses and since the trial judge did not expect that the jury would return a verdict for the plaintiff.

For the reasons previously stated, we believe that the trial court was mistaken in its view that plaintiff's complaint did not include sufficient allegations (in the absence of demurrer or motion to make more definite and certain) to provide a basis for proof from which the jury could find that the ordinance requiring exit doors swing "out" in the direction of exit travel was adopted in 1965; that subsequently defendant "The Flame, Inc." took out a building permit for alterations of the building under plans which showed this door as swinging "out," as required by the ordinance, and that defendants, as the owners and operators of that building, were responsible for an injury caused by an exit door installed in violation of the building code.

Since, according to the record, this was the original reason for the setting aside of this verdict and the granting of a new trial, and since, in our view, that

reason was insufficient to provide a proper basis for the granting of a new trial, it follows that the order of the trial court to that effect was in error and must be reversed unless there were other errors by the trial court in the conduct of the trial and which were included in defendants' alternative motion for a new trial so as to provide a proper basis for that order.

Assuming, however, as we must, that the other grounds of defendants' motion for new trial were also relied upon by the trial court in granting the new trial, we believe that the trial court did not err in any of such respects for the reasons set forth in this opinion.

Finding no such error in the conduct of the trial in this case, it follows that the order granting a new trial in this case must be reversed and that the verdict of the jury in favor of the plaintiff must be reinstated.