Argued September 29, 1978, reversed and
remanded for new trial March 19, reconsideration
denied April 16, petition for review denied May 30,
1979, 286 Or 449

# COLE, *Appellant,*
## *v.*
# MULTNOMAH COUNTY et al, *Respondents.*
## (No. 422-874, CA 8861)

592 P2d 221

Bernard Jolles, Portland, argued the cause and filed the brief for appellant. With him on the brief was Franklin, Bennett, Ofelt & Jolles, P.C., Portland. On the reply brief was William B. Aitchison, Portland.

Michael A. Lehner, Portland, argued the cause for respondents. With him on the brief were Wm. H. Mitchell and Hershiser, Mitchell, Mowery & Davis, Portland.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Plaintiff appeals from a judgment for defendants in this negligence action. The principal issues are whether contributory negligence was a proper defense on the facts of this case, and whether plaintiff was erroneously foreclosed from relying on state and county manuals concerning operation of local correctional facilities.

Plaintiff, while incarcerated at Rocky Butte Jail, was injured when he set his bedding on fire in what he alleges was a suicide attempt. There was evidence that plaintiff had been a reasonably well-behaved and adjusted prisoner; but that during about a month before the fire plaintiff's behavior became increasingly aberrant and withdrawn; for example, that he told a guard of the need to defend himself from imagined threats; that he asked a guard for a syringe and battery acid to use to kill himself.

The essence of plaintiff's theory was that defendants knew or should have known that he was mentally ill and potentially suicidal, and that defendants thus should have, in effect, protected plaintiff from himself. Specifically, plaintiff alleged defendants were negligent:

"1) In failing to provide for plaintiff's safety, when defendants knew, or should have known, that plaintiff had a desire to commit suicide or inflict bodily injury upon himself;

"2) In failing to give plaintiff proper or any medical or psychiatric treatment, when defendants knew, or should have known, that plaintiff had a desire to commit suicide or inflict bodily injury upon himself;
"* * * * *

"4) In failing to properly watch, care for and control the actions of the plaintiff since defendants knew, or should have known, that plaintiff had a desire to commit suicide or inflict bodily injury upon himself; and,

[213]

"5) In failing to provide proper fire fighting equipment, to wit: a fire hose, which could reach the cell in which plaintiff was placed."

As an affirmative defense, defendants alleged plaintiff was contributorily negligent:

"1. In igniting a fire with bed mattresses in his cell.

"2. In placing said mattresses in a position which prevented his cell door from opening.

"3. In tieing blankets around his cell door to prevent opening of that door.

"4. In failing to aid in the opening of said cell door to allow exit from it.

"5. In failing to place himself in a position in said cell to avoid injury.

"6. In failing to request medical attention."

■ Defendants argue that a person with mental illness is held to the same standard of care as a normal person, and thus that an insane person can be contributorily negligent. Abstractly, that may well be, but it misses the point in this case. Here, plaintiff contends that the failure of defendants to furnish him medical attention or otherwise prevent him from attempting suicide was a negligent breach of duty. Defendants' allegations of contributory negligence simply restate what plaintiff alleged in his complaint—that he was driven by mental illness to attempt suicide. Under these circumstances, the acts which plaintiff's mental illness allegedly caused him to commit were the very acts which defendants had a duty to prevent, and these same acts cannot, as a matter of law, constitute contributory negligence. *See Vistica v. Presbyterian Hospital,* 67 Cal2d 465, 62 Cal Rept 577, 432 P2d 193 (1967); *Hunt v. King County,* 4 Wash App 14, 481 P2d 593 (1971).

If plaintiff was not mentally ill, or if corrections officials were reasonably unaware of any illness, then defendants prevail because they were not negligent, not because plaintiff was contributorily negligent.

For this reason, we conclude the trial court erred in submitting the issue of contributory negligence to the jury.

Another group of assignments relate to the effect, if any, to be given to two documents: "Guidelines for Operation of Local Correctional Facilities" promulgated by the Corrections Division of the Department of Human Resources (hereinafter "state manual"); and "Revised Procedures Manual" promulgated by the Corrections Division of Multnomah County (hereinafter "county manual"). The questions are: (1) whether violation of the provisions of the state and county manuals establishes statutory negligence; (2) alternatively, whether parts of the state and county manuals were admissible as some evidence of the extent of the duty defendants owed plaintiff; and (3) whether, in either event, the provisions of the state and county manuals had to be plead.

The record contains very little information about the state and county manuals. Plaintiff consistently refers to them as "regulations." Defendants call them "guidelines." No party offers much helpful information to document his understanding of what the manuals are.

Apparently the state manual is that contemplated by ORS 169.090: "The Assistant Director for Corrections shall publish and distribute a manual of recommended guidelines for the operation of local correctional facilities * * *." This statute was enacted at the same time as ORS 169.075 (Or Laws 1973, ch 740, §§ 3, and 6) which mandates certain minimum standards that local correctional facilities must meet. So, in context, the state manual "of recommended guidelines" is probably a suggestion of an ideal, i.e., something more than the requirements of ORS 169.075.

The structure of the state manual tends to support such an inference. It contains a short section entitled

"Mandatory Standards" which seems to almost exclusively repeat the statutory requirements of ORS 169.075 and 169.140. The implication is that the balance of the state manual is something other than mandatory standards.

The record contains no explanation of the genesis of the county manual. It may have been adopted to comply with some of the state-imposed minimum standards:

> "Each local correctional facility shall:
> "* * * * *
> "(8) Provide rules and regulations of the facility * * *.
> "* * * * *
> "(10) Formulate and publish * * * policies and regulations for the operation of the facility." ORS 169.075.

But on this record, such a conclusion would be speculation.

The appearance of the county manual is also inconclusive. The manual is in the form of a "special order" of the Commanding Officer of the county Corrections Division. No party has bothered to explain the effect or meaning of a "special order" within the Multnomah County scheme of things.

■ The first step in any statutory negligence analysis is "a legislative enactment or administrative regulation." Restatement (Second) of Torts, § 285(a) (1965); *see Barnum v. Williams,* 264 Or 71, 504 P2d 122 (1972). On the present record, we cannot say that either the state manual or county manual are legislation or regulations. If the state manual had been adopted as an administrative rule, we would expect at least evidence that it had been filed with the Secretary of State pursuant to the Administrative Procedures Act, ORS 183.355(1). If the county manual had the force of legislation, we would expect some evidence or explanation of what gives it that status. Given the absence of evidence that the manuals have the force of

law, on this record we conclude they cannot here be the basis of a statutory negligence claim.

Plaintiff alternatively claims the trial court erred in excluding certain provisions of the manuals as some evidence of the standard of care that defendants owed him. This problem, in very general terms, can arise in a variety of ways. Is a statute, regulation or ordinance that is not entitled to statutory-negligence treatment nevertheless admissible as some evidence of negligence? Are a party's rules for internal operating procedures admissible as some evidence of negligence? Are advisory codes or standards issued by governmental bodies admissible as some evidence of negligence? *See generally,* Annotation, 58 ALR3d 148 (1974); Annotation, 50 ALR2d 16 (1956).

We find no Oregon cases that have viewed the problem in broad or general terms. But the holdings of a few cases, and implications in several others, suggest that such evidence is generally admissible. *Jones v. Mitchell Bros.,* 266 Or 513, 511 P2d 347, 514 P2d 350 (1973) (defendant's safety manual excluded on facts of case); *Landolt v. The Flame, Inc.,* 261 Or 243 492 P2d 785 (1972) (building code admitted on issue of negligence); *Archer v. Rogers Construction,* 252 Or 165, 447 P2d 380 (1968) (contract that incorporated "American Association of State Highway Officials Manual" admitted on issue of negligence); *Waterway Terminals v. P. S. Lord,* 242 Or 1, 406 P2d 556 (1965) (agreement to take safety precautions admissible); *Burroughs v. Southern Pacific Co.,* 153 Or 431, 56 P2d 1145 (1936) (defendant's safety rule excluded on facts of case); *Chadwick v. Oregon-Washington R. & N. Co.,* 74 Or 19, 144 P 1165 (1914) (defendant's rule admitted on issue of negligence); *Hecker v. Oregon Railroad Co.,* 40 Or 6, 66 P 270 (1901) (defendant's rule admitted on issue of negligence). There are, however, some contrary indications. *See Ashland v. Pacific P. & L. Co.,* 239 Or 241, 253-54, 395 P2d 420, 397 P2d 538 (1964). These cases, however, are sufficiently distinguishable

or inconclusive to not necessarily here be controlling—other than pointing generally toward admissibility.

■ Our efforts to examine the present problem of admissibility in greater depth is handicapped by the limited record noted above. It appears probable that the provisions of the state manual that plaintiff offered are advice from the state to the local governments on how to create the best possible correctional facilities. If so, these advisory guidelines state an ideal, not the ordinary standard of care. Moreover, if advisory guidelines were admissible as evidence of negligence, those working in the area might be less likely to make suggestions for improvement of correctional facilities. In light of the almost total lack of information in this record about the intended purpose or effect of the state manual, we are not prepared to hold that it is admissible as some evidence of negligence.

■ The record is also sparse about the county manual, but we conclude it contains a sufficient foundation to hold the county manual was admissible. Plaintiff made an offer of proof of certain provisions of the county manual while the "Chief Medic" from Rocky Butte Jail was testifying. The "medic" agreed that the county manual was the "procedures manual for the operation of the Multnomah County Jail" and was in effect at the time of plaintiff's injuries. While cryptic, we understand the thrust of the "medic's" testimony to be that the county manual contains the standards that corrections personnel are expected to meet.

So viewed, the county manual constitutes some indication of the care required under the circumstances, *Hecker v. Oregon Railroad Co., supra,* is in the nature of an admission of the care required in the circumstances, Annotation, 50 ALR2d, *supra,* at 22, and is analogous to evidence of the usual methods used in the circumstances, *Zimmerman v. W. Coast T-O SS. Lines,* 199 Or 78, 258 P2d 1003 (1953). For any or all of

these reasons, on this record the county manual was admissible.[1]

*Ashland v. Pacific P & L Co., supra,* is distinguishable. That case held Highway Commission rules, which at first blush appear comparable to the county manual here in question, to be "mere directives imposing a duty upon the employees of the commission for the Commission's benefit only" and therefore "no evidence of negligence." 239 Or at 253-54. It thus appears that in *Ashland* the plaintiff was relying on the Highway Commission rules as creating a duty, the unreasonable breach of which would be negligence. Here, by contrast, the basic duty in question is statutory: "The keeper of each local correctional facility shall furnish * * * necessary medical aid." ORS

[1] Plaintiff made an offer of proof of the following provisions of the county manual:

"9.1   MEDICAL AND DENTAL SERVICES
    " I.   POLICY
        "It is the basic policy of the jail to insure immediate and appropriate medical and dental services for every resident. The determination of the medical or dental treatment is the responsibility of the medical staff, but *every member will promptly report to them any resident's request or, where necessary, take immediate action in any medical emergency.* The screening of unnecessary requests for medical and dental services is the responsibility of the medical staff and will be done in an appropriate and dignified manner.
    "II.   MEDICAL & DENTAL SERVICES
        "* * * * *
        "D.   In any case where there is no reason to obtain immediate medical or dental attention, the officer's report will be forwarded immediately to the Medical Unit where it will be used by the medical attendants to:
        1. contact the resident at the next sick call
        2. appropriately treat the resident, or
        3. refer the resident to the doctor or dentist.
        "* * * * *
        "F.   Particular attention will be given to any narcotics addict, chronic alcoholic, or other resident who is suffering from a continual medical problem, to insure that, should they appear to be entering 'withdrawal' or be suffering from D.T.'s, or evidencing other serious symptoms, the on-duty medical officer examines them for immediate attention, and, if necessary treatment by the doctor or transportation to the hospital.
    "* * * * *."

[219]

169.140. The provisions of the county manual plaintiff offered, *see* n 1, *supra,* can be viewed as defining and elaborating on this general duty, not creating it.

■■ The final issue is whether provisions of the county manual had to be pleaded in plaintiff's complaint in order to be admissible. The fact that they were not pleaded was the actual basis of defendants' objection to their introduction, and the apparent basis of the trial court's ruling they were inadmissible. We can sympathize with the confusion that the parties and trial court may have shared. Plaintiff was contending, among other things, that the state and county manuals could be used to establish statutory negligence. There may well be situations where such a contention has to be pleaded with specificity. But given our conclusion that the manuals cannot be used, on this record, to establish statutory negligence, the question becomes whether the existence of the county manual had to be plead before it was admissible as some evidence of negligence. So stated, the question answers itself; parties are not required to plead their evidence; indeed, it is improper to do so. The county manual was admissible as some evidence of negligence even though it had not been plead. *See Landolt v. The Flame, Inc., supra.*

Reversed and remanded for new trial.

### LEE, J., specially concurring.

I disagree with that portion of the majority opinion which states:

> "* * * The county manual was admissible as some evidence of negligence even though it had not been plead. *See, Landolt v. Flame, Inc., supra."*

In *Landolt v. Flame, Inc.,* 261 OR 243, 249, 492 P2d 785 (1972), the *plaintiff alleged* "violation of Section 3303(b) of the Multnomah County Building Code" so that case does not appear to me to support the proposition for which it is cited.

[220]

Furthermore, as a matter of fundamental fairness it is my opinion that any provision of the manual, on which a party relies, should be plead to frame the issue and provide notice to all concerned.

In the instant case, the plaintiff's offer of proof, during trial, of the portion of the manual set forth in footnote 1 of the majority opinion constituted an intolerable surprise tactic—it should have been plead as was done in *Landolt.*

I concur with the remainder of the majority opinion.